**SPANISH ACTION COMMITTEE OF CHICAGO, Plaintiff-Appellant,**

v.

**CITY OF CHICAGO, et al., Defendants-Appellees.**

No. 85–1767.

United States Court of Appeals, Seventh Circuit.

Argued Oct. 29, 1986.

Decided Feb. 10, 1987.

Richard M. Gutman, Chicago, Ill., for plaintiff-appellant.

Sharon Baldwin, Asst. Corp. Counsel, Chicago, Ill., for defendants-appellees.

Before BAUER, Chief Judge, CUMMINGS and POSNER, Circuit Judges.

CUMMINGS, Circuit Judge.

The Spanish Action Committee of Chicago ("SACC") is a Humboldt Park Puerto Rican group organized to address community problems such as housing, education, police brutality, and community unrest. In 1966 the Intelligence Division Security Section of the Chicago Police Department undertook a secret operation to infiltrate and disrupt the activities of SACC. Upon uncovering evidence of this operation many years later, SACC and two individual plaintiffs brought suit under 42 U.S.C. § 1983 in 1980 against the City of Chicago and three police officers employed in the Security Section.[1] The suit charged the defendants with violating the plaintiffs' First Amendment right to associate freely and Fourteenth Amendment right to due process of law by carrying out a secret operation to destroy SACC, its leaders, and its community influence. The district court directed verdicts in favor of the defendants with respect to the individual plaintiffs' claims based on the failure of these plaintiffs to testify at trial. At the conclusion of the trial in 1984, the jury found that all four of the defendants had violated SACC's First Amendment rights but granted the three individual defendants qualified immunity. The jury awarded $60,000 in compensatory damages but no punitive damages, finding that none of the individual defendants possessed the state of mind necessary for such an award. The district court thus entered judgment in the amount of $60,000 against the City, the only non-immune defendant. This judgment was affirmed on appeal. *Spanish Action Committee of Chicago v. City of Chicago,* 766 F.2d 315 (7th Cir. 1985).

This action is now before us on appeal of the district court's award of costs and attorney's fees to plaintiff SACC pursuant to 42 U.S.C. § 1988. SACC originally sought $228,093.75 in attorney's fees (1,013.75 hours at an hourly rate of $150, adjusted upward by a multiplier of 1.5), $3,915.00 in paralegal's fees (87 hours at an hourly rate of $30, adjusted upward by a multiplier of 1.5), and $4,803.89 in expenses and costs. The district court reduced the amount of attorney's fees awarded to $46,312.50. In light of the limited, although significant, relief obtained in comparison to the scope of the litigation as a whole, and after eliminating hours it deemed to be unreasonable, unnecessary, or duplicative, the district court concluded that the plaintiff was entitled to compensation for only 308.75 hours. It further concluded that an upward multiplier adjustment was not justified since the $150 hourly market rate adequately reflected the risk involved in civil rights cases of similar complexity. The court made no express allowance for paralegal fees, stating instead that the paralegal fee request was part of the overall figure used to compute the attorney's fee award and that the plaintiff was adequately compensated for the entire litigation. Finally, the court disallowed various items of costs and expenses and awarded the plaintiff $1,102.86 in costs and $352.08 in out-of-pocket expenses.

## I.

■ Having had a $60,000 judgment entered in its favor, the plaintiff is certainly entitled to an award of attorney's fees as a prevailing party under § 1988. The dispute in this case centers on the appropriate amount of that award. The plaintiff contends that the district court improperly reduced the amount of attorney's fees requested to reflect what it considered to be the plaintiff's limited success. Because the

---

**1.** Documents evidencing police action against SACC were discovered during the course of related litigation in *Alliance to End Repression v. City of Chicago,* 561 F.Supp. 537 (N.D.Ill.1982). The unlawful surveillance and infiltration of which SACC complained were also directed at

numerous other organizations and individuals. The *Alliance* litigation was concluded by a negotiated consent decree, approved by the district court in 1982, which provided the plaintiffs with the permanent injunctive relief they sought against the City of Chicago.

$60,000 damages award constituted substantial compensation for the injury alleged according to the plaintiff, the district court erred in reducing the fee award merely because the plaintiff did not prevail on each contention it raised.

In *Hensley v. Eckerhart*, 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983), the Supreme Court set out guidelines for calculating the proper amount of an attorney's fee award in cases where the plaintiff only partially prevails on his claims. The Court divided these partial recovery cases into two categories. The first category involves cases where the plaintiff presents distinctly different claims for relief that are based on different facts and legal theories. A plaintiff may not recover attorney's fees for time expended on an unsuccessful claim if that claim is "distinct in all respects from his successful claims." *Id.* at 440, 103 S.Ct. at 1943. Unrelated claims must be treated "as if they had been raised in separate lawsuits." *Id.* at 435, 103 S.Ct. at 1940; see *Lenard v. Argento*, 808 F.2d 1242 (7th Cir.1987). The instant case does not fall within this first category. The district court found that the plaintiff sought relief based on a single course of wrongful conduct and that the unsuccessful claims were thus related to the successful claims.

The second category of partial recovery cases, into which this action does fall, includes those cases in which the plaintiff's claims for relief involve a common core of facts or are based on related legal theories. Because the majority of counsel's time will be devoted to the litigation as a whole, as opposed to any one specific claim, this type of lawsuit cannot be viewed as a series of discrete claims. As a result, time spent on related claims that ultimately prove unsuccessful should not be automatically excluded from the attorney's fee calculation. Instead, the focus in arriving at the appropriate fee award should be on "the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation." *Hensley*, 461 U.S. at 435, 103 S.Ct.

at 1940. Where the plaintiff has achieved "excellent results" and obtained "substantial relief," his attorney should recover a fully compensatory fee normally encompassing all hours reasonably expended on the litigation. In these circumstances, the Court noted, "the fee award should not be reduced simply because the plaintiff failed to prevail on every contention raised in the lawsuit." *Id.* This Court recently elaborated on this notion in *Lenard v. Argento*, 808 F.2d 1242, 1245 (7th Cir.1987):

> For tactical reasons and out of caution lawyers often try to state their client's claim in a number of different ways, some of which may fall by the wayside as the litigation proceeds. The lawyer has no right to advance a theory that is completely groundless or has no factual basis, but if he presents a congeries of theories each legally and factually plausible, he is not to be penalized just because some, or even all but one, are rejected, provided that the one or ones that succeed give him all that he reasonably could have asked for.

Where the plaintiff fails to obtain all that he reasonably could have asked for and achieves only partial or limited success, the lodestar amount—the product of the number of attorney's hours reasonably expended on the litigation as a whole times a reasonable hourly rate—is likely to be excessive. The Supreme Court therefore provided: "A reduced fee award is appropriate if the relief, however significant, is limited in comparison to the scope of the litigation as a whole." *Hensley*, 461 U.S. at 440, 103 S.Ct. at 1943. The Court, however, articulated no precise rule or formula to be followed in making such a reduction, instead choosing to leave this determination to the discretion of the district court in view of its greater familiarity with the litigation. *Id.* at 436–37, 103 S.Ct. at 1941. The Court did indicate that in reducing a fee award to reflect the plaintiff's limited success, a district court may attempt to identify specific hours that should be eliminated, or it may simply reduce the award across the board to account for the limited success. *Id.*

The plaintiff believes that it obtained "substantial relief" and that the district court was therefore precluded under *Hensley* from reducing its attorney's fee merely because it did not prevail on every claim that it raised. The district court found, and the defendant City of Chicago agrees, that despite winning a relatively large damages award, the plaintiff's success was only limited in comparison to the scope of the litigation as a whole and a substantial reduction in the number of plaintiff's attorney's hours was therefore warranted.

■ A Court of Appeals will not disturb an award of attorney's fees unless the district court committed an error of law in the computation or abused its discretion in calculating the amount. *Tomazzoli v. Sheedy*, 804 F.2d 93, 97 (7th Cir.1986) *(per curiam); Lynch v. City of Milwaukee*, 747 F.2d 423, 426 (7th Cir.1984). In *Tomazzoli*, this Court observed that there is no one correct formula for determining a fee award and characterized the district court's calculation as "anything but an arithmetical exercise." 804 F.2d at 97 (quoting *Evans v. Jeff D.*, — U.S. —, 106 S.Ct. 1531, 1542 n. 26, 89 L.Ed.2d 747). Nonetheless, the Supreme Court has emphasized that the district court must provide "a concise but clear explanation of its reasons for the fee award." *Hensley*, 461 U.S. at 437, 103 S.Ct. at 1941. Where the district court decides to adjust the amount requested because of the limited nature of the relief obtained by the plaintiff, it must "make clear that it has considered the relationship between the amount of the fee awarded and the result obtained." *Id.;* see *Tomazzoli*, 804 F.2d at 97; *Henry v. Webermeier*, 738 F.2d 188, 193 (7th Cir.1984) (when district judge wants to grant less than the hourly rate or the number of hours requested, he must give reasons justifying the particular cut he wants to impose). On the basis of this explanation, the Court of Appeals can then determine whether the district court considered and assessed all of the relevant information. *Tomazzoli*, 804 F.2d at 97.

The district court's opinion here provides a lengthy and detailed explanation for its decision to reduce substantially the number of hours for which the plaintiff requested compensation in light of the extent of the plaintiff's overall success. One of the most important factors motivating the district court was the plaintiff's failure to recover punitive damages against the three individual defendants because the jury found that they were entitled to immunity. "It was on this issue [of immunity] that the plaintiff lost its case against the officers and lost its opportunity to recover punitive damages. Since this is what the litigation was about, the plaintiff not only failed to prevail, it was the substantial loser." (*Spanish Action Committee of Chicago v. City of Chicago*, No. 80 C 4714, Mem.Op. at 9 (N.D. Ill. Feb. 14, 1985) (hereinafter Mem.Op.)). The claims against the individual defendants were an important part of the litigation because the plaintiff was barred from recovering punitive damages against the City of Chicago. See *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 101 S.Ct. 2748, 69 L.Ed.2d 616 (municipality cannot be held liable for punitive damages under 42 U.S.C. § 1983).

■ The plaintiff now argues that the punitive damages claims were only incidental and that the focus throughout the litigation was on recovering compensatory damages. Other evidence belies this contention. The complaint originally sought $70,000 in compensatory damages and $5,000,000 in punitive damages. While the plaintiff is correct in arguing that these amounts are irrelevant in determining whether the amount ultimately recovered constituted substantial compensation for the injury it suffered, they are instructive in demonstrating the significance of the punitive damages claims against the individual officers in relation to the litigation as a whole. Furthermore, the plaintiff refused a settlement offer in which the City agreed to pay the full amount of compensatory damages sought by SACC, demanding instead that any offer include some amount for punitive damages. Finally, the jury's rejection of the punitive damages claims

against the individual officers formed the basis for the plaintiff's principal argument on its initial appeal in this case. 766 F.2d 315 (7th Cir.1985).

◼ The plaintiff also argues that its failure to prevail on the punitive damages claims is irrelevant because the $60,000 judgment amounted to substantial compensation for its injury and was greater than or at least commensurate with the damages awards in similar internal security civil rights cases. This argument misses the mark. At no time did the district court ever suggest that the $60,000 constituted less than substantial relief with respect to the claims seeking compensatory damages. The fact remains, however, that the plaintiff chose to devote substantial time and resources both at trial and on appeal to establishing its right to recover a significant amount of additional punitive damages from the individual officers. These punitive damages claims against the officers required proof of elements that were not raised by the compensatory damages claim lodged against the City, namely, whether the officers possessed the requisite state of mind to warrant an award of punitive damages and whether the officers were entitled to immunity.

◼ Although the $60,000 compensatory damages award compensated the plaintiff for its injury, it did not come close to giving the plaintiff all that it had asked for. This is not a case like the one contemplated by this Court in *Lenard v. Argento*, at 1245, where the plaintiff advances a number of theories to support a single recovery and ultimately prevails on only one of those theories. Here the plaintiff attempted and failed to establish a basis for recovering from the individual defendants damages separate and distinct from the compensatory award it sought against all of the defendants. It is disingenuous for the plaintiff, having lost on punitive damages, to claim now that the issue was inconsequential. The district court was therefore correct in finding that the plaintiff's failure to prevail on the punitive damages claims— "that were driving the litigation" (Mem.Op.

at 10)—was an important factor to be considered in determining whether the total number of attorney's hours expended was reasonable.

◼ Another principal factor motivating the district court's decision to reduce the attorney's fee award requested was the nature and scope of the relief obtained by the plaintiff. As we indicated in n. 1 *supra*, SACC was only one of numerous organizations and individuals who were victims of the City of Chicago's campaign of unlawful surveillance and disruption. In settlement of two large class action suits, the City agreed in 1981 to the entry of a consent decree which in essence prohibited the City from conducting investigations solely on the basis of activities protected by the First Amendment. See *Alliance to End Repression v. City of Chicago*, 561 F.Supp. 537 (N.D.Ill.1982); *American Civil Liberties Union v. City of Chicago*, 561 F.Supp. 537 (N.D.Ill.1982). The district court, which also presided over the class action suits and approved the consent decree, found that "[a]ny prayer for injunctive or declaratory relief in this case, however, was more or less mooted by the City's 1981 consent decree executed in the *Alliance* case, with which plaintiff's attorney was thoroughly involved. Thus, despite the importance of the first amendment rights involved in this litigation, the suit sought only damages, and the court may consider this fact in determining whether the hours expended were reasonable." (Mem.Op. at 11–12).

The plaintiff objects that the district court improperly equated the extent of success in a civil rights action with the dollar amount of the plaintiff's recovery, instead of looking to whether the plaintiff's action promoted the policies underlying 42 U.S.C. §§ 1983 and 1988 by enforcing the civil rights laws and deterring future violations. In *Lynch v. City of Milwaukee*, 747 F.2d 423, 429 (7th Cir.1984), this Court made clear that "where the primary relief sought is injunctive or similarly nonmonetary, the amount of a § 1988 fee award is not to be reduced merely because money damages

may be low or nominal." We held that civil rights plaintiffs should be compensated for vindicating the public policy even though they do not receive, or even seek, personal benefit. That scenario is not the one we face here. The plaintiff's demand for injunctive relief was mooted by the *Alliance* consent decree, thereby reducing what was at stake in this litigation to merely an award of compensatory damages for past conduct which substantially and solely benefited the plaintiff. The plaintiff maintains that the $60,000 judgment nevertheless carries a significant deterrent effect because the consent decree can be violated in the future. However, the consent decree contains its own enforcement scheme, and given the breadth of the decree, any future violations of the type committed here will be dealt with within that scheme.

In light of the consent decree, this suit will not generate any "external benefits" in civil rights enforcement beyond the damages awarded, for which the plaintiff should be compensated. See *Lenard,* at 1248. To that extent, it bears close resemblance to a conventional personal injury suit. In *Lenard,* we indicated that in such a case the district court may look to the terms of an existing contingent fee arrangement between the plaintiff and his lawyer as a significant factor in computing the appropriate amount of a fee award under § 1988. 808 F.2d at 1248. No such contingent fee contract existed here, and the district court expressly rejected the defendant's suggestion that the fee award should be reduced to one third of the actual damages, the result of a typical contingent fee arrangement, because the recovery of damages for constitutional wrongs serves important public policies not implicated by an ordinary tort suit. The district court was clearly correct, however, in anticipating our directive in *Lenard* that the external benefits generated by a civil rights suit should be . considered in determining "whether the time put in by [the plaintiff's] lawyers was reasonable in light of the success (intangible as well as tangible) obtained." 808 F.2d at 1248.

In addition to analyzing the effect of the *Alliance* consent decree on the nature of the relief obtained by the plaintiff, the district court also considered the effect of the decree on the complexity of this case and the novelty of the issues raised. "[B]ecause of a 1981 agreed order negotiated by the parties in *Alliance,* in which the plaintiff's attorney in this case was involved, the liability issues in this case were clarified, and plaintiff's damage claims and the immunity of the individual defendants were the principal issues in this action." (Mem.Op. at 10). Although the plaintiff argues that the consent decree contained no admission or finding of liability, the First Amendment/internal security issues presented by this case were fully researched and developed by the plaintiff's attorney in the course of negotiating the settlement order in *Alliance.* While the fact that a case is straightforward and raises no novel issues is not a ground for automatically reducing a fee award, the simplicity of the factual and legal issues involved is relevant to determining whether the hours expended by the plaintiff's attorney were reasonable. See *DiFilippo v. Morizio,* 759 F.2d 231, 235 (2d Cir.1985); *Henry v. Webermeier,* 738 F.2d 188, 194 (7th Cir.1984).

As a final factor justifying the reduction in the fee award, the district court noted that on the eve of trial the plaintiff abandoned its wrongful surveillance and intelligence-gathering claims, which involved time periods well beyond those actually litigated by the plaintiff at trial. In addition, judgment was entered against the two individual plaintiffs and in favor of all the defendants because those plaintiffs failed to testify at trial, although at least one of them was present in the courtroom and presumably was able to take the stand in support of his claims. The plaintiff argues that the district court erred in reducing the fee award to reflect its failure to prevail on these claims because they were related to the claims on which it did prevail. Under *Hensley,* however, a plaintiff is entitled to be compensated for hours spent on related but unsuccessful claims only if the extent

of the plaintiff's overall success warrants that those hours be included in arriving at a reasonable attorney's fee award. See *Illinois Welfare Rights Organization v. Miller*, 723 F.2d 564, 567 (7th Cir.1983).

■ Although the compensatory damages award was significant, we are persuaded that the overall relief obtained by the plaintiff was "limited in comparison to the scope of the litigation as a whole." The district court was therefore justified in reducing the number of attorney's hours claimed by the plaintiff to reflect the plaintiff's only partial success. Deferring to the district court's discretion is particularly appropriate here because, as noted, it presided over both this action and the two prior class actions and thus was uniquely qualified to assess the effect of the interrelationship between those cases in computing a reasonable fee award.

■ While the district court was justified in substantially reducing the attorney's fees requested, the plaintiff does point out an irregularity in the procedure used by the district court to make the reduction. The court initially reduced the number of attorney's hours claimed from approximately 1,000 to 500 to account for the relative simplicity of the case and the plaintiff's limited success. It then determined that a further reduction of 191.25 hours was required to eliminate those hours that were either inadequately documented or not "reasonably expended" in the sense of being "excessive, redundant, or otherwise unnecessary." *Hensley*, 461 U.S. at 434, 103 S.Ct. at 1939. By first reducing the number of hours to reflect the plaintiff's partial success and then eliminating those hours deemed wasteful, the district court may have, according to the plaintiff, eliminated certain hours twice from the plaintiff's total request.

■ The plaintiff advances two alternative theories. First it suggests that the district court made a determination that the plaintiff was entitled to compensation for only 500 of the non-wasteful hours expended in light of the results obtained and the nature of the case. In that event, the district court clearly erred in subtracting the approximately 200 wasteful hours from the 500-hour benchmark since according to its own calculations the plaintiff had expended 800 non-wasteful hours on the case as a whole (1,000 hours claimed minus 200 hours deemed wasteful). Under this theory, the plaintiff should have been compensated for the entire 500 hours which it was entitled to claim. The plaintiff's second theory suggests that the district court made a determination that the plaintiff was entitled to compensation for only fifty percent of the non-wasteful hours expended on the case to account for limited success. If this theory were true, plaintiff should have been compensated for fifty percent of the 800 hours "reasonably expended" or 400 hours.

Although both of the plaintiff's theories are plausible, neither is directly supported by the district court's opinion reducing the fee award. The court never stated that it believed 500 was the appropriate number of non-wasteful hours which should have been spent on the litigation given the relief obtained. It similarly never stated that it believed that the non-wasteful hours expended by the plaintiff should be reduced by fifty percent. Rather it simply declared that it was reducing the number of hours claimed by approximately 500 to reflect limited success and by another 200 to eliminate wasteful hours. Although the district court clearly reversed the correct order of these two calculations, its opinion is susceptible of a reading that it believed the approximately 300 hours on which the fee award was ultimately based to be a reasonable amount in relation to the overall results obtained by the plaintiff in the litigation. This conclusion is further substantiated by the district court's statement in its supplemental opinion issued March 29, 1985, that it "still finds that the amount awarded on February 14, 1985, was reasonable compensation for the entire litigation." Given the extensive and detailed explanation provided by the district court for reducing the requested fee award and the ambiguity present in its opinion, we cannot

say that the error, if any, committed by the court in calculating a reasonable award of attorney's fees was so significant as to constitute an abuse of discretion warranting reversal.

 To avoid this kind of confusion in the future, district courts confronted with the task of computing fee awards in cases where the plaintiff has obtained only partial success on related claims should adhere closely to the procedure set out in *Hensley.* First the district court should eliminate all hours claimed that are either not "reasonably expended" or inadequately explained. Only then should it adjust the total number of "reasonably expended" hours so that the final award is reasonable in relation to the overall results obtained by the plaintiff.

## II.

 Two relatively minor errors remain. First the plaintiff contends that the district court abused its discretion by failing to award a specific amount for paralegal's fees. The plaintiff sought fees for 87 hours of paralegal time at a market rate of $30 per hour. The district court's February 14, 1985, opinion did not discuss the plaintiff's request for paralegal's fees nor did it award a specific amount for such fees. In its March 29, 1985, supplemental opinion, the court explained that "the paralegal fee request, though not expressly mentioned, was part of that overall figure used to compute" the attorney's fee award set out in the February 14th opinion. This Court has expressly rejected the notion that law clerk and paralegal expenses are reflected in an attorney's fee award and has instead held that a prevailing party under § 1988 is entitled to a separate and distinct award as compensation for paralegal time reasonably expended on the case. *Cameo Convalescent Center, Inc. v. Senn,* 738 F.2d 836, 846 (7th Cir.1984), certiorari denied, 469 U.S. 1106, 105 S.Ct. 780, 83 L.Ed.2d 775; *Spray-Rite Service Corp. v. Monsanto Co.,* 684 F.2d 1226, 1249–1250 (7th Cir.1982), affirmed on other grounds,

465 U.S. 752, 104 S.Ct. 1464, 79 L.Ed.2d 775. We continue to adhere to our belief expressed in *Cameo* that "[s]uch a policy encourages cost-effective delivery of legal services and, by reducing the spiraling cost of civil rights litigation, furthers the policies underlying civil rights statutes." 738 F.2d at 846.

At oral argument, the defendant City conceded that the district court had erred in failing to award the plaintiff a specific amount for paralegal's fees and made no objection to the 87 hours requested or the $30 hourly rate.[2] The plaintiff is therefore entitled to an additional $2,610 in paralegal's fees.

 The plaintiff also argues that the district court abused its discretion by denying $98 in costs for witness fees because the witnesses whose fees were denied were not physically present in the courtroom. According to the district court's opinion, the witnesses in question were subpoenaed prior to the trial in the good-faith belief that their testimony would be necessary to the disposition of the case. When it became apparent that their testimony would be cumulative, they were never called and did not physically appear in the courtroom. (Mem.Op. at 2–3). The district court erred in concluding that physical presence in the courtroom is necessary to recovering witness fees. Fees paid to a witness who was subpoenaed but did not actually attend the trial may be allowed as costs "when it was reasonably expected that his attendance would be necessary and he had held himself in readiness to attend." 6 Moore's Federal Practice ¶ 54.77[5.–1], at 54–437 (footnote omitted); see also *Hurtado v. United States,* 410 U.S. 578, 584–585, 93 S.Ct. 1157, 1161–1162, 35 L.Ed.2d 508 (28 U.S.C. § 1821 reaches those witnesses who have been summoned and are "in necessary attendance on the court, in readiness to testify" but whose physical presence in the courtroom is not required; statute compensates for availability to testify,

---

**2.** At oral argument the plaintiff indicated that it had abandoned its request that the paralegal's

fee award be upwardly adjusted by a multiplier of 1.5.

not physical presence). The City conceded that the district court abused its discretion in denying the witness fees. We therefore award the plaintiff an additional $98 in costs.

### III.

The district court's award of $46,312.50 in attorney's fees to the plaintiff under § 1988 is affirmed. Because of the errors with respect to the paralegal's fees and the witness fees, we award the plaintiff $2,610 to cover its paralegal expenses and an additional $98 in costs as witness fees.