269 N.J. Super. 394 (1993)
635 A.2d 586
SYLVIA ROBB, PLAINTIFF,
v.
RIDGEWOOD BOARD OF EDUCATION AND FREDERICK STOKLEY, DEFENDANTS.
Superior Court of New Jersey, Chancery Division Bergen County.
Decided August 30, 1993.
*400 Sheldon H. Pincus for plaintiff (Bucceri & Pincus, attorneys).
Mark J. Blunda for defendants (Sills, Cummis, Zuckerman, Radin, Tischman, Epstein & Gross, attorneys).
KOLE, J.A.D., retired and temporarily assigned on recall.
The issue before the court is the extent to which, if at all, Robb is entitled to an award of counsel fees and costs.
The Law Against Discrimination (LAD), in N.J.S.A. 10:5-27.1, authorizes an award of a reasonable attorney's fee and costs to a prevailing party in an action or proceeding brought under that statute. See Singer v. State, 95 N.J. 487, 495-500, 472 A.2d 138 (1984), cert. denied, 469 U.S. 832, 105 S.Ct. 121, 83 L.Ed.2d 64 (1984); Council Enterprises, Inc. v. Atlantic City, 200 N.J. Super. 431, 440-41, 491 A.2d 789 (Law Div. 1984). I find that Robb is a prevailing party in the instant action. To be a prevailing party, a plaintiff must have "succeeded on any significant claim affording it some of the relief sought." Texas State Teachers v. Garland Independent School Dist., 489 U.S. 782, 791, 109 S.Ct. 1486, 1493, 103 L.Ed.2d 866 (1989). See also Nadeau v. Helgemoe, 581 F.2d 275, 278-79 (1st Cir.1978), quoted in Hensley v. Eckerhart, 461 U.S. 424, 433, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40 (1983).
In my opinion of June 14, 1993, I ruled in favor of plaintiff Robb on one of her five claims for relief with respect to positions in the school district under LAD. I held that she had been discriminated against by defendant Ridgewood Board of Education by reason of her sex in their refusal to employ her as a high school social studies teacher and directed that she be so employed by the Board. I also ordered the Board to pay her $2,500 in compensatory damages. I further ruled that she is entitled to attorneys' fees and costs under LAD with respect to that one claim for relief as to which she was the prevailing party. I stated that the disparate impact thesis that was part of her case with respect to the other four claims should not have been in the case at all; and, since it involved a great deal of unnecessary time and effort, both by the *401 court and the parties, the amount of counsel fees and costs that would be allowed might be diminished somewhat by reason thereof.
Plaintiff's attorneys have submitted certifications as to the time spent by them on the entire case, the time allocated by them to the disparate impact claim, and the time spent on matters other than the disparate impact claim. As to the latter time, they assert that they are entitled to be compensated for no less than 70% thereof. It is asserted that some of their preparation for trial, and evidence at the trial on the other claims related to the quasi-administrative positions, gave significant background or other information relevant to the high school social studies teacher's job. Thus, it is argued, Bass's testimony as to sexual stereotypes in both the treatment and impact analysis was pertinent to the issue of plaintiff's being discriminated against by virtue of her being considered by Waneck as a non-feminine woman (as defined in the opinion).
It is also asserted that there was a great amount of overlap between strategies, materials, proofs and testimony which bore upon all of the five positions. For example, plaintiff argues, disparate treatment claims involving stereotypical categorization were made with respect to all five positions; and the case law, research, briefs, and the like, on these issues were applicable to all of the positions.
Furthermore, it is stated there was much overlap of testimony, notwithstanding that a witness may have primarily testified as to a position for which Robb did not prevail. For example, Folkemer was a committee member for the position of lead teacher, but he also became part of the proofs relating to the high school teaching position, having been contacted by Waneck about Robb. His perceptions of Robb, it is alleged, contributed to Waneck's stereotyping, and both Robb and Folkemer testified at length on these issues, separate and apart from the position of lead teacher. By way of further example, plaintiff states, the testimony of Superintendent of Schools, Dr. Frederick Stokley defies proportional *402 division, given his involvement with the Waneck issue and Robb's separate count against him.
Essentially, it is argued, most of the effort expended on the other four discriminatory treatment counts of the complaint was substantially interrelated to, and contributed to, both the analysis and a favorable determination of the fifth count. For that reason, it is claimed, such time should be compensated for by way of counsel fees.
The Board of Education (the Board) correctly points out that the court in its comments as to the counsel fees that may be allowed improperly focused in its opinion on the positions involved, rather than the many claims for relief in the complaint.
There were nine claims for relief in the complaint. Five of them related to specific positions. Apart from the four quasi-administrative positions, the separate claims for which no relief was granted are the following: (1) substantive discrimination against Stokley; (2) disparate impact, by reason of the lack of or low number of Jewish or Jewish female administrative staff in Ridgewood; and (3) punitive damages. There was also a claim relating to stereotyping of plaintiff by reason of the committee interview system. But that claim is really encompassed in the charges relating to the four quasi-administrative positions. This reduces the number of claims to eight. Thus, it is not inappropriate to conclude that in fact plaintiff was successful on only one of her eight claims for relief.
A proportional reduction in the lodestar amount (discussed hereafter) based simply or solely on a mathematical approach comparing the total number of issues in the case with those actually prevailed upon cannot serve as the basis for determining a reasonable fee for the prevailing party. However, such a comparison is germane to determining the degree of plaintiff's success, e.g., the extent to which it was limited in nature, considering the entire relief sought. Popham v. City of Kennesaw, 820 F.2d 1570, 1579-88 (11th Cir.1987) (citing and quoting from the *403 Supreme Court's opinion in Hensley, supra, 461 U.S. at 424, 103 S.Ct. at 1933).
I disagree with the Board's contention that no fees should be awarded to Robb. Their reasons therefor are unpersuasive.
It is true that Robb had effective access to the judicial process to vindicate her civil right to the high school teacher's job, since her attorneys were furnished to her free of charge by her union. The union paid them $111,297.50 in fees and $21,894.91 in expenses. But it appears that she is required by agreement to reimburse the union to the extent she receives money in this action.
In any event, although the prevailing party's ability to pay may be considered in setting the amount of the fee, it is not a proper factor in the decision of whether or not to award a fee. Singer v. State, supra, 95 N.J. at 498, 472 A.2d 138. Nor is the fact that the fees will be paid by a public body from tax dollars a determinative factor. See ibid., where the State was the defendant. See also Council Enterprises, Inc. v. Atlantic City, 200 N.J. Super. 431, 491 A.2d 789 (Law Div. 1984); Ramirez v. County of Hudson, 169 N.J. Super. 455, 404 A.2d 1271 (Ch.Div. 1979).
That punitive damages were not granted does not mean that the relief that was awarded was not intended to have a deterrent effect, as the Board contends. The Board would be short-sighted indeed if its success on the punitive damage award alone did not deter future LAD violations, in view of the finding that it did violate LAD, the grant of a mandatory injunction to place Robb in the high school position, the damages awarded to Robb, and the reasons given therefor in the opinion, as well as the significant discussion therein of the problems the Board may have with respect to creed discrimination.
It is clear that Robb succeeded on a significant issue in the litigation, thereby achieving at least one of the benefits she sought in bringing the suit. Accordingly, she is entitled to attorney fees and costs. Although she did not succeed on every issue that she *404 raised and did not receive all of the relief she requested, she still has the status of a prevailing party. The degree of the plaintiff's overall success goes to the reasonable amount of the attorney fee award and costs, rather than to the preliminary matter of the availability of a fee or costs award. See Texas State Teachers, supra, 489 U.S. at 792-93, 109 S.Ct. at 1494.

Attorneys' Fees
Having determined that Robb is entitled to a reasonable attorney fee, it is necessary to determine the proper amount of the fee to be awarded. Hensley, supra, 461 U.S. 424, 103 S.Ct. 1933, provides the appropriate analysis. Accord, Singer v. State, supra, 95 N.J. at 499, 472 A.2d 138. As specified in Hensley, the most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate. Hensley, supra, 461 U.S. at 433, 103 S.Ct. at 1939. This calculation, typically referred to as the lodestar, provides an objective basis on which to make an initial estimate of the value of a lawyer's services. Id.
It does not, however, end the inquiry. The court may, in light of other considerations, adjust the fee upward or downward. Id. at 434, 103 S.Ct. at 1940. One such consideration is that of the "results obtained," a particularly important factor where, as here, a plaintiff is deemed "prevailing," even though she succeeded on only one of her claims for relief. Id. In such a case, the court can reduce the lodestar to reflect the plaintiff's partial success.
If the claims on which the plaintiff did not prevail and the claims upon which she did prevail are distinctly different claims that are based on different facts and legal theories, the court cannot award any fee for services on the unsuccessful claims. Id. at 434-435, 103 S.Ct. at 1940. However, if the unsuccessful and the successful claims "involve a common core of facts" or are "based on related legal theories," it will be difficult to divide the hours expended on a claim-by-claim basis. Thus, the court should compare the plaintiff's overall relief with the number of hours *405 reasonably expended on the litigation. Id. at 435, 103 S.Ct. at 1940. If the plaintiff obtained "excellent results," her attorney should be duly compensated for all time reasonably expended on the litigation. Id. However, if she obtained only "partial or limited success," the court may reduce the lodestar amount if it believes that amount is excessive in relation to the plaintiff's relief.
The court may attempt to identify specific hours that should be eliminated, or it may simply reduce the award to account for the limited success. Id. at 436, 103 S.Ct. at 1941. The second method is particularly useful where the unsuccessful claims are related to the successful claims; in that event, it will frequently be impossible to identify a specific number of hours devoted to the unsuccessful, related claims. Institutionalized Juveniles v. Secretary of Pub. Welfare, 568 F. Supp. 1020, 1030-31 (E.D.Pa. 1983), aff'd in part, vacated in part on other grounds, 758 F.2d 897 (3d Cir.1985). In any event, the decision as to the method to be used rests in the equitable discretion of the court. Hensley, supra, 461 U.S. at 436, 103 S.Ct. at 1941.
According to the certifications submitted by plaintiff's attorneys, there were two attorneys who contributed to the representation of Robb throughout this litigation: Sheldon H. Pincus, a senior partner in the firm of Bucceri & Pincus, and Mary J. Hammer, an associate in the firm. The certifications show that Pincus expended a total of 516.75 hours on the case while Hammer expended a total of 654 hours. 69.625 hours of Pincus's time and 94.25 hours of Hammer's time were spent in services related to the disparate impact claim. Therefore, the total amount of hours for services on non-disparate impact claims is 447.125 hours for Pincus and 559.75 hours for Hammer.
Plaintiff was successful on only one of her five discriminatory treatment claims relating to the high school teaching position. She was unsuccessful with respect to all discriminatory treatment claims relating to the four quasi-administrative positions, as well as her claim as to discrimination by Stokley. It is evident, therefore, that the product of hours expended on discriminatory *406 treatment analysis or issues times a reasonable hourly rate would lead to an excessive attorney fee.
Robb's counsel do not dispute that this court may reduce the attorney fee amount to account for the plaintiff's limited success. They assert, however, as previously stated, that they are entitled to be compensated for 70% of the time spent on issues other than the disparate impact matter. It is true, as indicated, that the courts have explicitly rejected the proportional reduction of the lodestar based simply on a mathematical approach comparing the total number of issues in the case with those actually prevailed upon. Hensley, supra, 461 U.S. at 435 n. 11, 103 S.Ct. at 1940 n. 11. It is also true that an attorney fee award does not have to be proportionate to the amount of damages that the plaintiff has recovered. City of Riverside v. Rivera, 477 U.S. 561, 574-581, 106 S.Ct. 2686, 2694-2697, 91 L.Ed.2d 466 (1986). See also Davis v. Southeastern Pennsylvania Transp. Auth., 924 F.2d 51, 53-55 (3d Cir.1991); Northeast Women's Ctr. v. McMonagle, 889 F.2d 466, 471-475 (3d Cir.1989).
However, I am convinced that an award of a fee for 70% of the non-disparate impact hours in the present case would be most unreasonable. Plaintiff's degree of success can hardly be classified as excellent, even when the disparate impact issue is excluded. Plaintiff was not successful with respect to any issue relating to the quasi-administrative positions. She was not successful with respect to her claim against the Superintendent of Schools, Stokley. She was not successful with respect to her claim for punitive damages. She was not successful in demonstrating that any interview committee selection procedure utilized by defendant was improper. Furthermore, she failed to satisfy her burden of proof with respect to her claims of creed discrimination and her claim that she was discriminated against by reason of her being perceived as a pushy Jewish female. In short, plaintiff prevailed on only one claim: failure to obtain a high school social studies position because of her gender (Count V).
*407 I agree with defendants' contention that the "lion's share" of this litigation was devoted to positions, claims, and theories other than the high school social studies position issues. I recall that of the twenty-three days of trial in this action, the vast majority of that time was devoted to issues that were totally unrelated to the high school social studies position. The record reflects that, apart from Robb, ten witnesses testified with reference to the quasi-administrative positions, six witnesses testified with reference to the middle school lead teacher position, six witnesses testified with respect to religious discrimination, and only five witnesses testified with respect to the high school social studies position.
Moreover, the parties were required to file trial and post-trial briefs, as well as supplemental briefs, on such matters as disparate impact theories and the retroactive effect of the Civil Rights Act of 1991. These briefs, for the most part, focused on issues other than the discriminatory treatment cause of action for the high school social studies position.
Furthermore, the nine witnesses who were deposed before trial all testified with respect to either the quasi-administrative positions or evidence of disparate impact in the district. None of the depositions related to the high school social studies position.
Plaintiff's attorneys claim that the prevailing rate for attorneys' services is $200 per hour for Pincus and $150 per hour for his associate, Mary J. Hammer. Pincus charges his clients at rates ranging between $165 and $200 per hour for his time.
As already stated, Robb entered into an agreement with the New Jersey Education Association (NJEA) as to attorneys' fees and costs. Under that agreement, her attorney was paid what he asserts is a "volume discount rate" of $90 to $100 per hour (irrespective of whether a partner or an associate performed the work) over the time periods involved herein. The $90 rate was paid for work prior to September 1, 1991. The $100 rate was paid for work thereafter. Robb is required to repay the Association to the extent she recovers "monies as the result of any claim for *408 damages, fees or costs." The NJEA has thus far paid the Pincus firm $111,297.50, as follows:

 577.75 hours at $90 per hour = $51,997.50
 593.00 hours at $100 per hour = 59,300.00
 ________ ___________
 1,170.75 $111,297.50

It has also paid the Pincus firm its expenses or costs incurred in the litigation, $21,894.91. All of these amounts include the time and costs involved in preparing the fee application.
I am satisfied that the prevailing rate for Pincus's services is $200 per hour and for Hammer's services is $150 per hour. Both rates, respectively, are those charged by adequately experienced attorneys possessed of average skill and ordinary competence and reflect the hourly charge in this area for such attorneys. Singer v. State, supra, 95 N.J. at 500-01, 472 A.2d 138. Compare Council Enterprises, Inc., supra, 200 N.J. Super. at 446-47, 491 A.2d 789, decided in 1984.
I accept the number of hours devoted to this case as set forth in the certifications of plaintiff's attorneys. So does defendant Board. I also accept their calculation of the hours related to the disparate impact claim, for which no fee allowance will be made. As pointed out in the opinion, that claim and the analysis involved therein were inappropriately injected into this case. I do have some question, however, as to whether more time than is stated was not devoted to this claim. For example, the briefs requested by the court on the applicability of the 1991 amendment to the Federal Civil Rights Act made it clear that the statute was not relevant to any matter in this case other than the disparate impact claim.
The theory of female stereotyping was part of the fabric of the case involving all of the claims, excepting the disparate impact and possibly the punitive damages counts. There was expert evidence on this theory by Bass, and both he and plaintiff placed considerable emphasis thereon throughout the case. It should be noted, *409 however, that the theory as to such stereotyping had already been developed in case law. See Price Waterhouse v. Hopkins, 490 U.S. 228, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989), and other cases cited in my earlier opinion. Accordingly, the contribution Bass made in this respect to the successful claim, although not minimal, is not too substantial. Plaintiff should be allowed fees for the time reasonably spent with respect to such evidence, as well as the input relating to that claim of such witnesses as Stokley. Folkemer's evidence relating to the teaching position is not as significant as plaintiff states. He merely gave a statement to Waneck as to Robb's ability as a teacher. It was hardly a substantial factor in Waneck's wrongful stereotyping of Robb.
It is true, as defendant contends, that plaintiff's concerns in this case appear to be directed primarily at the quasi-administrative jobs, perhaps by reason of the additional compensation involved. But there is no doubt that she was genuinely interested in a transfer to the high school. The fact that the evidence related to the latter was much less extensive than for the other four positions does not make her success as to the high school job at all insignificant in the context of the whole case. Her success, however, for the purpose of assessing fees for hours devoted to the entire case may be said to involve limited relief as compared to all of the relief sought. Thus, I must determine whether the expenditure of her attorney's time on the entire litigation was reasonable in relation to the actual relief obtained, and, if not, as is the case here, reduce the award commensurately. See Hensley, supra, 461 U.S. at 435-40, 103 S.Ct. at 1940-43; Singer, supra, 95 N.J. at 500, 472 A.2d 138.
There is no doubt, as plaintiff states, that the issues in this case of discriminatory treatment were complex and sophisticated. They were presented in a very able fashion by attorneys for both plaintiff and defendant. These are factors which the court must also consider.
After reviewing the submissions by counsel and considering all of the factors that should be part of a reasonable fee assessment *410 in this case, including compensation for those hours on other claims reasonably related to the one successful claim, I make the following findings and conclusions:
1. Plaintiff requests an award reflecting 70% of the time spent on all of the claims other than the disparate impact claim. The total requested fee would thus be $129,791.35 for services, which would include the fee application. This request is manifestly excessive in the context of this case.
2. A reasonable percentage factor, in my view, is 20% of the time spent on claims other than the disparate impact issue, taking into account all of the evidence and theories in the case (other than disparate impact) that affected the successful claim. It is simply coincidental that this 20% factor, on its face, appears to represent success on one of five positions sought, since it is not intended as such. As already indicated, the Court may not make a proportional reduction of the lodestar based solely upon the percentage of claims upon which the plaintiff was successful. In any event, as noted, plaintiff was unsuccessful in six out of what may be considered discriminatory treatment claims, as well as the one disparate impact claim.
I have concluded that an award for 20% of the attorneys' time on this litigation is fair and reasonable and truly reflects the degree of plaintiff's success, in light of the entire case and the matters already discussed. Other courts have reduced lodestar amounts by similar percentages to account for limited success by plaintiffs. See Popham v. City of Kennesaw, 820 F.2d 1570 (11th Cir.1987) (two-thirds reduction); Spanish Action Committee of Chicago v. City of Chicago, 811 F.2d 1129 (7th Cir.1987) (reduction of lodestar by approximately 80%); Davis v. Southeastern Pennsylvania Transp. Auth., 735 F. Supp. 158 (E.D.Pa. 1990), aff'd, 924 F.2d 51 (3d Cir.1991) (two-thirds reduction); Phillips v. Weeks, 586 F. Supp. 241 (E.D.Ark. 1984) (75% reduction).
3. Plaintiff's counsel seeks to recover, as part of its fee award, a total of about $11,762.50 for time spent in preparing a memorandum *411 of law, certification, and related documents in support of their fee application. Based upon a review of the certifications, services performed in connection with the fee application consumed 70 hours of attorneys' time. This figure breaks down as follows:

 Pincus:
 25.25 hours x $200.00 per hour = $ 5,050.00
 Hammer:
 44.75 hours x $150.00 per hour = $ 6,712.50
 __________
 Total: $11,762.50

When an award of attorneys' fees is statutorily authorized, as here, the reasonable expenses of preparing the fee application should be included in the award. David v. City of Scranton, 633 F.2d 676 (3d Cir.1980); Bagby v. Beal, 606 F.2d 411, 416 (3d Cir.1979); Prandini v. National Tea Co. 585 F.2d 47, 53 (3d Cir.1978); Brown v. Fairleigh Dickinson Univ. 560 F. Supp. 391, 414 (D.N.J. 1983); Council Enterprises, Inc. v. Atlantic City, 200 N.J. Super. 431, 443, 491 A.2d 789 (Law Div. 1984).
However, here an award of $11,762.50 for time spent on the fee application would not be appropriate. The preparation of a fee application, although often time consuming, ordinarily is not a particularly complex endeavor and does not require a high degree of legal skill or expertise. Much of the time spent necessarily involves reviewing time sheets and differentiating between time spent on successful claims as opposed to unsuccessful claims. Plaintiff's lawyers should not recover fees for these services at the same rate as for their work on the merits of the case. See Institutionalized Juveniles, supra, 568 F. Supp. at 1034. (citing Lindy Bros. Builders, Inc. v. Am. Radiator & Standard Sanitary Corp., 487 F.2d 161 (3d Cir.1973) (Lindy I) and Lindy Bros. Builders, Inc. v. Am. Radiator & Standard Sanitary Corp., 540 F.2d 102 (3d Cir.1976) (Lindy II)). I find that Pincus and Hammer should recover at rates of $150.00 and $125.00, respectively, *412 for these services. When these rates are used, the award for the fee application is reduced to a total of $9,381.25 as follows:

 Pincus:
 25.25 hours x $150.00 per hour = $3,787.50
 Hammer:
 44.75 hours x $125.00 per hour = $5,593.75
 _________
 Total: $9,381.25

Additionally, there is authority that supports the view that a fee award for hours devoted to the preparation of a fee application should be reduced when the plaintiffs do not achieve complete success on the fee petition. For instance, in Institutionalized Juveniles v. Secretary of Pub. Welfare, 568 F. Supp. 1020, 1034 (E.D.Pa. 1983), aff'd 758 F.2d 897 (3d Cir.1985), the court reduced the award for preparation of the fee application by a factor of .125 because the plaintiff failed to achieve complete success on that application. This decision was affirmed by the Third Circuit, which reasoned as follows:
(T)he fee reduction rationale of Hensley, because it is intended to ensure the award of a reasonable fee in light of the results obtained, applies by force of the Court's reasoning to fees generated in the litigation of a fee petition, and compels us to treat the fee petition litigation as a separate entity subject to lodestar and Hensley reduction analysis.

[Id., 758 F.2d at 924.]
However, the fee application itself, by reason of the unusual result in this case, involved a somewhat complex analysis of the time spent by the attorneys.
In view of the foregoing, I have concluded that a reasonable award with respect to the fee application is $2,500. The hours that Pincus and Hammer spent on fee application work will be subtracted in computing the lodestar and a total of $2,500 will be added after the lodestar amount has been calculated.
*413 The starting point in determining the lodestar amount for the underlying case is determined as follows:

 Pincus Hammer
 516.75 total hrs. 654.00 total hrs.
Less Impact Claim 69.625 hours 94.25 hours
 ________ ________
 447.125 hours 559.75 hours
Less Fee Application 25.25 hours 44.75 hours
 ________ ________
 421.875 hours 515.00 hours

The 421.875 hours attributed to Pincus will be multiplied by $200 per hour, or a total of $84,375. The 515 hours attributable to Hammer will be multiplied by $150 per hour, or a total of $77,250. The addition of these amounts ($84,375 plus $77,250) results in $161,625, the lodestar amount. Defendant Board is chargeable with paying plaintiff 20% of the lodestar figure, or $32,325. There should be added to this the $2,500 I am allowing for the fee petition.
Thus, the total attorney fees awarded plaintiff and payable by the Board is $34,825.

Costs
Plaintiff seeks $3,808.51 as costs for the non-impact phase of the case, plus 30% of expenses in connection with the disparate impact claim ($5,425.92) a total of $9,234.43. Since the expense of Bass's contribution to the stereotyping aspect of the case cannot be determined on what has been submitted, I will allow the sum of $500 for such expense. All but $500 of the balance of the $5,425.92 in impact costs is disallowed. I find that a fair allocation of costs involved in the successful claim payable by the Board is $2,000. This sum includes the $500 expense for Bass.

Conclusion
Plaintiff is awarded $34,825.00 as attorneys' fees and $2,000.00 in costs, all to be paid by defendant Board.