**Lillian TAUBER, et al., Plaintiffs,**

v.

**CITY OF CHICAGO, et al., Defendants.**

No. 79 C 5160.

United States District Court,
N.D. Illinois,
Eastern Division.

Jan. 19, 1999.

---

Philip C. Stahl and George R. Dougherty of Grippo & Elden, Chicago, IL, for Plaintiffs.

Nancy Van Allen, Senior Attorney–Supervisor at Corporation Counsel of City of Chicago, Chicago, IL, for Defendants.

## MEMORANDUM OPINION AND ORDER

SHADUR, Senior District Judge.

This opinion is, it may be devoutly wished, the principal portion of the last chapter of the final volume in litigation that has reached encyclopedic proportions both before and after this Court inherited the case—post-Consent-Decree—from its former colleague Honorable Stanley Roszkowski. As the final Class B [1] claimant who has asserted a violation of the April 1983 Consent Decree entered by Judge Roszkowski, Junerous Cook ("Cook") obtained only partial success—best evidenced by her having taken a now-pending appeal from this Court's April 27, 1998 memorandum order that, after the parties had stipulated to the numbers conforming to this Court's ruling on the merits, resulted in an award to Cook of $94,530 (while she had sought to recover over $400,000) in back pay, which together with prejudgment interest produced a total judgment of $239,137. In addition to obtaining that money judgment, Cook had been hired by the City of Chicago ("City") in August 1997 at a starting annual salary of $42,468 (and she is still working for City). Now at issue is the semifinal motion of counsel, who represented both Cook and the other Class B claimants, for additional attorneys' fees and expenses beyond those previously approved and awarded by this Court.[2]

### Scope of the Dispute

At this Court's request made in an effort to eliminate the ships-passing-in-the-night phenomenon that has caused some difficulties in the past, earlier this week the parties submitted the Supplemental Statement referred to in n. 2. That January 13 submission has simply been attached to this opinion to facilitate the discussion of the areas of agreement and disagreement to which analysis must be applied here.

### City's Objections

As the Supplemental Statement reflects, City's remaining objections in the aggregate amount of $44,789.50 comprise $2,911 characterized as "vague time entries," $12,162 labeled as "front pay entries," $13,283.50 charged as "excessive attorneys' entries" and $16,433 challenged as "excessive Westlaw expenditures." All of those objections may be dealt with in short order.

■ As for the proposed knockout of "front pay entries," City does not appear to recognize what would be an inappropriate and really unfair double-whammy effect that would be created by first excising all of the

---

1. This opinion will simply preserve, without repeating those definitions, the shorthand definitions employed in the host of prior orders and opinions in the case. And to avoid unduly lengthening this opinion, this Court will also assume the reader's familiarity with almost everything that has gone before (again without repeating the tortuous history of the litigation).

2. "Semifinal" is an appropriate hedge word only because the parties' most recent joint Supplemental Statement filed on January 13, 1999 concludes:

> City does not dispute that interest and reasonable fees and expenses incurred in proving fees are recoverable. The amounts of those awards will be determined after the Court rules on plaintiffs' final fee and expense request and City's objections.

time assertedly spent on Cook's frontpay claim because Cook lost on that claim, and then by applying a deep discount (City seeks 65%) to the resulting reduced fee request on the ground that Cook had obtained only partial success—with that very failure to prevail on the frontpay claim being one of the two most significant components of the claimed lack of total success. As for the other three objected-to items, this Court also finds those objections to be unpersuasive in the context of the global universe that is presented by Cook's claim here. Neither asserted vagueness nor asserted excessiveness has been shown to exist, and City will derive ample relief via the across-the-board reduction later ordered in this opinion.

Accordingly that percentage reduction (which is discussed hereafter) will be applied to the gross amount of $399,687.50 that the Supplemental Statement shows as ascribed to "Cook fees," and the entire request of $39,002.62 for "Cook expenses" will be allowed without reduction. Of course the uncontested "Logan fees" of $28,230.50 and "Logan expenses" of $2,331.91 referred to in the Supplemental statement are allowed as well.

### Across–the–Board Reductions

■ Cook's counsel disputes the legal appropriateness of any percentage reduction as a matter of law. But that contention is at odds with what is at least an implied recognition of the permissibility of such an approach in the seminal decision in *Hensley v. Eckerhart*, 461 U.S. 424, 436–37, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983):

> There is no precise rule or formula for making these determinations. The district court may attempt to identify specific hours that should be eliminated, or it may simply reduce the award to account for the limited success. The court necessarily has discretion in making this equitable judgment. This discretion, however, must be exercised in light of the considerations we have identified.

That latter option—a reduction of the award without parsing the specific hours to be eliminated—has been upheld both by our Court of Appeals (*Spanish Action · Committee of Chicago v. City of Chicago*, 811 F.2d 1129, 1133 (7th Cir.1987), reading *Hensley* as permitting a reduction "across the board to account for the limited success"; *Zook v. Brown*, 865 F.2d 887, 895–96 (7th Cir.1989), approving a 75% reduction for the same reason; *Estate of Borst v. O'Brien*, 979 F.2d 511, 516–17 (7th Cir.1992), approving a 40% reduction on identical grounds) and by Courts of Appeals elsewhere (listed in order of Circuits): see, e.g., *United States Football League v. National Football League*, 887 F.2d 408, 415 (2d Cir.1989); *Thurman v. Yellow Freight Sys., Inc.*, 90 F.3d 1160, 1169–70 (6th Cir.1996); *H.J., Inc. v. Flygt Corp.*, 925 F.2d 257, 260–61 (8th Cir.1991); *Berry v. Stevinson Chevrolet*, 74 F.3d 980, 990 (10th Cir.1996) and *Gilmere v. City of Atlanta*, 864 F.2d 734, 741–42 (11th Cir.1989).

■ Cook's counsel urge that *Jaffee v. Redmond*, 142 F.3d 409 (7th Cir.1998), in its post-Supreme-Court-remand incarnation, has cut the legs out from under such an approach, but that really misstates the effect of *Jaffee* in the type of situation involved here. It is worth quoting at some length from *Jaffee, id.* at 414 to see just what it does and does not teach that bears on this case:

> In the context of partial recovery cases, we have interpreted *Hensley* to permit attorney's fees for unsuccessful claims when those claims involved a common core of facts or related legal theories. *See, e.g., Spanish Action Comm. v. City of Chicago*, 811 F.2d 1129, 1133 (7th Cir.1987). For example, we have affirmed a district court's award of fees for time spent pursuing an unsuccessful employment discrimination claim, brought in tandem with a successful retaliation claim, because "the court found that the successful claim for retaliatory discharge could not have been tried effectively without reviewing and analyzing the facts that led to the underlying discrimination charge." *Merriweather v. Family Dollar Stores*, 103 F.3d 576, 584 (7th Cir.1996). Hensley's rejection of "the mechanical claim-chopping approach", *see Lenard v. Argento*, 808 F.2d 1242, 1245 (7th Cir.1987), has led us to an approach that is more in tune with the realities of litigation, in which we focus on the overall

success of the plaintiff rather than the success or failure of each of the plaintiff's causes of action:

> For tactical reasons and out of caution lawyers often try to state their client's claim in a number of different ways, some of which may fall by the wayside as the litigation proceeds. The lawyer has no right to advance a theory that is completely groundless or has no factual basis, but if he presents a congeries of theories each legally and factually plausible, he is not to be penalized just because some, or even all but one, are rejected, provided that the one or ones that succeed give him all that he reasonably could have asked for.

*Id.* at 1245–46.

We have analogized from *Hensley's* approach concerning related claims to losing arguments in support of successful claims. In *Kurowski v. Krajewski*, 848 F.2d 767, 776 (7th Cir.), *cert. denied*, 488 U.S. 926, 109 S.Ct. 309, 102 L.Ed.2d 328 (1988), we addressed the defendant's contention that unproductive legal research in support of a fully successful claim was not compensable under § 1988. We rejected that argument, even though some of the legal research never made its way to trial, because *Hensley* "says that the court should subtract time for losing claims, but a losing argument in support of a successful claim for relief is fully compensable time." *Id.*; *see also Pressley v. Haeger*, 977 F.2d 295, 298 (7th Cir.1992) ("*Hensley* permits the court to award fees for losing arguments in support of prevailing claims, but not for losing claims."). Accordingly, just as *Hensley* dictates that fees incurred on unsuccessful but related claims may be compensable, we have recognized that courts may award fees for time reasonably spent on an unsuccessful argument in support of a successful claim. As we noted in *People Who Care v. Rockford Board of Education*, 90 F.3d 1307, 1314 (7th Cir.1996), the touchstone in such a case is not whether a particular argument was successful, but rather whether it was reasonable. *See also Cabrales v. County of Los Angeles*, 935 F.2d 1050, 1053 (9th Cir.1991) ("If a plaintiff ultimately wins on a particular claim, she is entitled to all attorney's fees reasonably expended in pursuing that claim—even though she may have suffered some adverse rulings.").

Hence *Jaffee* upheld the award of fees for "an unsuccessful but reasonable argument in support of a successful claim" (*id.*), for which purpose "the adverse rulings that [plaintiff] suffered along the way [rejecting such arguments] were merely temporary setbacks on her way to victory [on the claim itself]" (*id.*).

■ By contrast, here it was two of Cook's substantive *claims* that were substantially unsuccessful. Although this Court certainly has no desire to denigrate the efforts of Cook's highly competent counsel, it cannot be gainsaid that they were only fractionally successful on both her backpay claim and her frontpay claim (though to be sure the latter appears likely to have been at least a partial catalyst for her being hired to the substantial position that she now occupies).

It is always difficult to quantify with any particularity the appropriate extent of an across-the-board reduction. In this instance this Court, like the parties, has labored through years of wrangles over Cook and all the other Class B plaintiffs who have benefited greatly from counsel's efforts. And though City disputes any lodestar enhancement as requested by Cook (surprise!), it also cannot be gainsaid that less doggedly persistent lawyers than the counsel in this case would very likely have succumbed in the face of City's often obstructionist tactics—the types of tactics that this Court's late and great colleague Honorable Hubert Will used to refer to as the "Stalingrad defense," fighting for the retention of every figurative street and falling back only one figurative block at a time only to do battle on the next figurative street.

Taking into account both (1) the substantial degree of Cook's lack of success on her total claims (even though those claims were not frivolous as such) and (2) the great value of counsel's services in having obtained substantial success in the face of a war of attrition that very probably would have defeated

less dedicated advocates,[3] this Court finds that the sought-after fees should not even be halved—that a 40% reduction appears to be most fair instead. That produces an award of the sum of these amounts:

1. 60% of the $399,687.50 "Cook fees" claim, or $239,812.50;

2. all of the claimed "Cook expenses" of $39,002.62;

3. all of the undisputed "Logan fees" of $28,230.50; and

4. all of the equally undisputed "Logan expenses" of $2,331.91.

### Lodestar Enhancement

What has just been said has given full consideration to the request by Cook's counsel for enhancement of the lodestar figure as it applies to the Cook claim. But Cook's counsel also asks for a different kind of across-the-board adjustment: a 30% enhancement not only of their Cook-related services but also of the large attorneys' fee awards previously entered in connection with counsel's services for the other Class B plaintiffs. That too may be dispatched swiftly.

■ Both the large award approved by this Court on August 12, 1994 covering all fees and expenses through February 28, 1994 and the large award approved on February 18, 1997 covering fees and expenses from March 1, 1994 through June 30, 1996 were expressly made the subject of *final* orders, in each instance through the invocation of Fed. R.Civ.P. 54(b). Those awards cannot be revisited by Cook's counsel through indirection via the medium of advancing arguments for enhancement that could and should have been made before this Court issued its final rulings on those services.

### Conclusion

City is ordered to pay an aggregate of $268,043 in attorneys' fees and $41,334.53 in out-of-pocket expenses (see the final paragraph of the section of this opinion on *Across–the–Board Reduction*), together with

appropriate interest determined in the same fashion as in connection with the earlier awards in this litigation. And as the parties have jointly recognized, the last step in the process of closing this action down finally will be a determination of reasonable fees and expenses that were incurred in the current dispute over fees and expenses (a matter on which the parties' counsel are expected to confer swiftly and then present an appropriate submission or submissions to this Court).

---

3. It should also not be forgotten that the work of Cook's counsel caused City to cave in on the liability issue only a few months after Cook first made her claim, so that the question should not

be looked at simply in terms of the success or lack of success on the damages phase of Cook's case.