Morris v. Scenera Research, LLC, 2017 NCBC 47.

| | |
|---|---|
| STATE OF NORTH CAROLINA<br><br>COUNTY OF WAKE<br><br>ROBERT PAUL MORRIS,<br><br>Plaintiff,<br><br>v.<br><br>SCENERA RESEARCH, LLC and RYAN C. FRY,<br><br>Defendants. | IN THE GENERAL COURT OF JUSTICE<br>SUPERIOR COURT DIVISION<br>09 CVS 19678<br><br><br><br>**FINAL JUDGMENT AND ATTORNEYS' FEE AWARD** |

1. THIS MATTER is now before the Court on Plaintiff's five motions seeking an award of attorneys' fees and expenses (hereafter collectively referred to as "attorneys' fees") incurred at different stages of the litigation, and on Morris's Motion to Strike Defendants' Reply to Morris's Request for Pre-judgment Fees and Expenses ("Motion to Strike"). For the reasons discussed below, the Court DENIES Plaintiff's Motion to Strike and awards Plaintiff attorneys' fees in the amount of $843,405.59.

*Young Moore and Henderson, P.A., by Walter E. Brock, Jr. and Andrew P. Flynt, for Plaintiff.*

*Parker Poe Adams & Bernstein LLP, by Catharine B. Arrowood and Scott E. Bayzle, for Defendants.*

Gale, Chief Judge.

## I. MATTER BEFORE THE COURT AND SUMMARY OF AWARD

### A. Background

2. This case was tried before a jury in January 2012. At the conclusion of the trial, Plaintiff had prevailed on his statutory claims for unpaid wages and

retaliatory discharge, and Defendant Scenera Research, LLC ("Scenera") had prevailed on the invention and patent ownership claims. This Court entered the Judgment based on the jury verdict on May 14, 2012 ("2012 Judgment"). The case has now returned to this Court, after appeals to the North Carolina Court of Appeals and the North Carolina Supreme Court, for resolution of the sole issue of Plaintiff's award of attorneys' fees.

3. Ultimately, each aspect of the 2012 Judgment was upheld after appeals to the Court of Appeals and Supreme Court, except the award of attorneys' fees, which the Court of Appeals reversed and remanded. Plaintiff successfully defended his monetary recoveries on his wage and discharge claims, as well as his right to attorneys' fees on those claims, but unsuccessfully challenged other portions of the 2012 Judgment. Defendants successfully defended the ruling in their favor that Plaintiff has no ownership rights in inventions made during the course of his employment or in patent applications or issued patents related to those inventions, which the Court refers to as "ownership claims."

4. In the 2012 Judgment, the Court, in its discretion, awarded Plaintiff $450,000 of the $819,752.41 requested for fees incurred up to the time of judgment. *Morris v. Scenera Research, LLC*, No. 09-CVS-19678, 2012 NCBC LEXIS 29, at *30–33 (N.C. Super. Ct. May 14, 2012), *aff'd in part and rev'd in part*, 229 N.C. App. 31, 747 S.E.2d 362 (2013), *aff'd in part and rev'd in part*, 368 N.C. 857, 788 S.E.2d 154 (2016). While the Court found that all of Plaintiff's fees had been reasonably incurred and charged at reasonable rates, it concluded that the request should be reduced to

make the award "reasonable in relation to the results obtained." *Hensley v. Eckerhart,* 461 U.S. 424, 440 (1983); *see Morris*, 2012 NCBC LEXIS 29, at \*30–33. In doing so, the Court determined that fees should be apportioned between Plaintiff's successful and unsuccessful claims.

5.      In reversing this Court's award of attorneys' fees, the Court of Appeals stated that

> [o]n appeal, Morris argues that the business court erred by allocating among legal claims—and thereby reducing his award of attorneys' fees—because (1) claims that arise from a common nucleus of operative facts *should not be allocated*; (2) the business court "failed to make any findings of fact or offer any conclusions of law on whether Morris's claims and Defendants' counterclaims [arose] from a common nucleus of operative fact[ ]"; and (3) the parties' claims did, in fact, arise from a common nucleus of operative fact. *We agree with Morris's first two arguments* and refrain from addressing the third.

*Morris*, 229 N.C. App. at 56, 747 S.E.2d at 377–78 (alterations in original) (emphasis added) (quoting Brief for Plaintiff/Cross-Appellant at 22–23, *Morris*, 229 N.C. App. 31, 747 S.E.2d 362 (No. COA12-1481)).  In short, the Court of Appeals' holding essentially mandates that Plaintiff must recover all fees related to any claim arising from a nucleus of operative facts common to his successful wage and discharge claims.

6.      The parties cross-appealed other issues to the North Carolina Supreme Court, but neither party appealed the Court of Appeals' holding on the award of attorneys' fees.

7.      The Court has been directed to make fact findings as to which fees incurred prior to the 2012 Judgment relate to claims that arise from a nucleus of operative facts common to Plaintiff's successful claims.  *See Morris*, 2016 NCBC

LEXIS 101, at \*27; *see also Morris*, 229 N.C. App. at 56, 747 S.E.2d at 377–78. In directing that no fees should be apportioned if they arise from a nucleus of operative facts common to Plaintiff's successful claims, the Court of Appeals severely limited the Court's discretion.[1] Earlier Court of Appeals decisions had held that a trial court is not required to apportion fees among successful and unsuccessful claims, but had not prohibited a trial court from apportioning fees between claims in order to award an amount that would be reasonable in relation to the plaintiff's overall success. Unfortunately, the elimination of that discretion has led, and will likely lead in other cases, to extended litigation over which fees relate to which claims. This case also presents the unsettled question whether a plaintiff can, in addition to the initial award of attorneys' fees, recover fees incurred in defending the initial award.

8. Further background on this litigation is available in the multiple reported decisions issued as the case wound through the trial and appellate process. *See, e.g., Morris*, 368 N.C. 857, 788 S.E.2d 154, *aff'g in part and rev'g in part* 229 N.C. App. 31, 747 S.E.2d 362, *aff'g in part and rev'g in part* 2012 NCBC LEXIS 29; *Morris v. Scenera Research, LLC*, No. 09-CVS-19678, 2016 NCBC LEXIS 101 (N.C. Super. Ct. Dec. 19, 2016); *Morris v. Scenera Research, LLC*, No. 09-CVS-19678, 2012 NCBC LEXIS 1 (N.C. Super. Ct. Jan. 4, 2012).

---

[1] This Court considered this holding when entering its judgment in *Out of the Box Developers, LLC, v. Doan Law, LLP*, and found that it could, under the particular facts of that case, apportion fees. *See* No. 10-CVS-8327, 2014 NCBC LEXIS 39, at \*23–25 (N.C. Super. Ct. Aug. 29, 2014). That judgment was not appealed.

**B.      Plaintiff's Five Attorneys' Fees Motions**

9.      The attorneys' fees motions now before the Court are (1) Plaintiff's Motion for Supplemental Relief, filed on March 7, 2012, and supplemented on April 18, 2012, and May 10, 2012, seeking fees incurred through April 30, 2012, in the amount of $819,752.41 ("Prejudgment Fees"); (2) Plaintiff's Motion for Attorneys' Fees Incurred After Entry of Judgment, filed on July 19, 2012, seeking fees incurred defending against Defendants' Motion for Judgment Notwithstanding the Verdict ("JNOV") or, in the Alternative, for a New Trial, between May 1, 2012, and June 30, 2012, in the amount of $29,049.56; (3) Plaintiff's Motion for Attorneys' Fees and Expenses Incurred on Appeal to the North Carolina Court of Appeals, filed on June 28, 2016, seeking fees incurred during the appeal to the North Carolina Court of Appeals between July 1, 2012, and September 5, 2013, in the amount of $133,027.16; (4) Plaintiff-Appellee/Cross-Appellant's Motion for Attorneys' Fees Incurred on Appeal, filed with the Supreme Court on June 22, 2016, and remanded to this Court, seeking fees incurred during the appeal to the North Carolina Supreme Court between September 6, 2013, and May 19, 2015, in the amount of $163,101.83; and (5) Plaintiff's Motion for Attorneys' Fees Incurred After the North Carolina Supreme Court's Decision, filed March 9, 2017, seeking fees incurred between June 10, 2016, and February 28, 2017, on the remanded issue of attorneys' fees in the amount of $95,570.94 (collectively the "Motions").  Together, the Motions seek an award of $1,240,501.90 in attorneys' fees and also seek interest on that award.

**C.    A Summary of The Award of Prejudgment Fees**

10.    In the following discussion, the Court divides its analysis between the award of attorneys' fees incurred prior the 2012 Judgment, which was reviewed by the Court of Appeals, and the award of attorneys' fees incurred after judgment, which has not been reviewed by the Court of Appeals.  The Court expressly incorporates its December 19, 2016 Order and Opinion on Request for Attorneys' Fees ("December Order"), which summarized its understanding of the Court of Appeals' mandate regarding the award of prejudgment attorneys' fees.  *See Morris*, 2016 NCBC LEXIS 101, at *27–32.

11.    The Court concludes that a substantial portion of Plaintiff's efforts related to a nucleus of facts common to all claims because the efforts and claims were inextricably intertwined.  *See Hensley,* 461 U.S. at 435 ("Much of counsel's time [was] devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis."); *Okwara v. Dillard Dep't Stores, Inc.*, 136 N.C. App. 587, 595, 525 S.E.2d 481, 487 (2000) (explaining that the determination of whether claims are inextricably interwoven is to be determined in the court's discretion).  It is now difficult to parse those efforts between individual claims on which Plaintiff succeeded and those which he did not.  The Court's award of attorneys' fees in the 2012 Judgment was not based on parsing efforts between successful and unsuccessful claims.

12.    The 2012 Judgment did not reduce the award of attorneys' fees based on findings that certain fees were related distinctly to claims that did not relate to the

common nucleus of operative facts. Rather, the Court exercised its discretion to reduce the fee award to insure that the award was reasonable in relation to Plaintiff's success. To the extent that the Court of Appeals' reversal of the 2012 Judgment rested on this Court's failure to adequately explain the factors it considered in making its discretionary award, in the following discussion, the Court will further explain its reasons for concluding, and continuing to conclude, that the award of $450,000 in the 2012 Judgment is the appropriate award of prejudgment fees.

13. But the Court of Appeals' mandate now requires this Court to make findings as to which efforts were related to the nucleus of operative facts common to Plaintiff's successful claims and then to apportion only those fees not related to that common nucleus. The Court will, as best it can, determine which fees can be deducted from Plaintiff's requested amount in accordance with the Court of Appeals' mandate. Under this more restrictive standard, the Court determines that Plaintiff must be awarded $670,315.56 of his requested $819,752.41 in Prejudgment Fees.

**D.     A Summary of The Award of Postjudgment Fees**

14. Plaintiff seeks to recover all fees incurred after the 2012 Judgment. Defendants contend that there is no statutory authority for Plaintiff to recover any fees incurred after the 2012 Judgment. For the reasons explained below, the Court concludes that the governing statutes allow the Court, in its discretion, to award Plaintiff fees incurred to defend the judgment in his favor, including fees necessary to defend his right to recover attorneys' fees. There is a clear basis to separate fees incurred on appeal among various claims, and Plaintiff is not entitled to recover fees

that were incurred on appeal in his unsuccessful attempt to reverse rulings adverse to him. The Court awards Plaintiff a total of $173,090.03 of the $420,749.49 requested for fees incurred after the 2012 Judgment.

## II. PLAINTIFF'S PREJUDGMENT ATTORNEYS' FEES

### A. Plaintiff's Motion to Strike Defendants' Reply Brief Is Denied.

15. As a preliminary matter, the Court denies Plaintiff's Motion to Strike Defendants' Reply to Morris's Request for Pre-Judgment Fees and Expenses. The Court's ruling does not depend on Defendants' reply.

### B. The Court's Reasons in Support of Its Discretionary Award of $450,000 in Prejudgment Fees in the 2012 Judgment

16. The Court was confident that it had broad discretionary authority to determine the appropriate attorneys' fee award. First, any award of attorneys' fees must have a statutory basis, and in this case, the authorities for Plaintiff's award of attorneys' fees are N.C. Gen. Stat. § 95-25.22(d) (the "Wage and Hour Act" or "WHA") and N.C. Gen. Stat. § 95-243(c) (the "Retaliatory Discharge Act" or "REDA"). Both statutes allow for the award of attorneys' fees, but do not mandate such an award. *See* N.C. Gen. Stat. § 95-25.22(d) (2015) ("The court, in any action brought under this Article *may*, in addition to any judgment awarded plaintiff, order costs and fees of the action and reasonable attorneys' fees to be paid by the defendant."); *id.* § 95-243(c)(4) ("The court *may* award to the plaintiff and assess against the defendant the reasonable costs and expenses, including attorneys' fees, of the plaintiff in bringing an action pursuant to this section.") (emphasis added).

17.     Second, when entering the 2012 Judgment, this Court sought to faithfully implement the directive of the United States Supreme Court in *Hensley v. Eckerhart,* which had been adopted by the North Carolina Court of Appeals in *Whitesides Estates, Inc., v. Highlands Cove, LLC*, 146 N.C. App. 449, 467, 553 S.E.2d 431, 443 (2001) and in *Hamilton v. Memorex Telex Corp.*, 118 N.C. App. 1, 16–17, 454 S.E.2d 278, 286 (1995).  *Hensley* directs that a trial court should exercise its discretion to grant an award of attorneys' fees that is "reasonable in relation to the results obtained."  461 U.S. at 440.  To make a reasonable award of attorneys' fees, the trial court should first eliminate all fees solely related to a claim on which the plaintiff did not prevail if that claim is "distinct in all respects from his successful claims," and second, from the remaining fees, the court should award an amount that is reasonable in relation to the outcome of the litigation.  *Id.*  More specifically, *Hensley* explains that

> [w]here the plaintiff has failed to prevail on a claim that is distinct in all respects from his successful claims, the hours spent on the unsuccessful claim should be excluded in considering the amount of a reasonable fee. Where a lawsuit consists of related claims, a plaintiff who has won substantial relief should not have his attorney's fee reduced simply because the district court did not adopt each contention raised.  But where the plaintiff achieved only limited success, the district court should award only that amount of fees that is reasonable in relation to the results obtained.

*Id.*

18.     The Court reads the second prong of the *Hensley* standard to allow, if not encourage, trial courts to reduce the amount of attorneys' fees requested if doing so is necessary to make the award reasonable in relation to the litigation outcome. *Id.*; 461 U.S. at 435 (explaining that in cases where "[m]uch of counsel's time will be

devoted generally to the litigation as a whole . . . the district court should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation.")

19.    This Court does not read *Hensley*, or prior North Carolina Court of Appeals' opinions adopting *Hensley*, to only allow trial courts to eliminate fees that were distinctly related to claims on which the plaintiff did not succeed.  The Court of Appeals has held that a trial court is not obligated to reduce fees where a plaintiff did not succeed on all claims if those claims "stem from a common nucleus of law or fact," but that holding did not prohibit a trial court from reducing the award of attorneys' fees, especially if such a reduction is necessary to make the award reasonable in relation to the plaintiff's overall success.  *Okwara*, 136 N.C. App. at 595, 525 S.E.2d at 486; *see also Whitesides Estates, Inc.*, 146 N.C. App. at 467, 553 S.E.2d at 443 ("[W]here all of plaintiff's claims arise from the same nucleus of operative facts and each claim was 'inextricably interwoven' with the other claims, apportionment is unnecessary," but not prohibited (quoting *Okwara*, 136 N.C. App. at 596, 525 S.E.2d at 487)).    To the contrary, the Court of Appeals had emphasized that the determination of whether to allocate fees "is left largely to the discretion of the trial courts," and that "'reasonableness, not arbitrary classification of attorney activity, is the key factor under all [North Carolina] attorneys' fees statutes' in awarding fees for attorney activity."  *Okwara*, 136 N.C. App. at 595, 525 S.E.2d at 487; *Whitesides Estates, Inc.*, 146 N.C. App. at 467, 553 S.E.2d at 443 (quoting *Coastal Prod. Credit Ass'n v. Goodson Farms, Inc.*, 70 N.C. App. 221, 228, 319 S.E.2d 650, 656 (1984)).  The

Court read *Hensley, Okwara,* and *Whiteside* to be consistent in holding that the fee award is ultimately a discretionary one.

20. When applying the *Hensley* standard, the Court concluded the second step was the most important, because it found that the ownership claims on which Plaintiff was unsuccessful were not "distinct in all respects" from Plaintiff's successful claims. 461 U.S. at 440. The Court determined that there was a substantial overlap in the underlying fact record on which the statutory claims and ownership claims were based; therefore, it did not exclude fees under the first step of the *Hensley* standard.

21. However, it was clear that Plaintiff's total request for fees should be significantly reduced to achieve a reasonable relationship between the award and the outcome of the litigation. *See Hensley*, 461 U.S. at 436 (explaining that where a plaintiff achieves only limited success, "even where the plaintiff's claims were interrelated," the total request for attorneys' fees "may be an excessive amount" and the trial court must reduce the amount so that is reasonable in relation to "the degree of success obtained"). The addition of the ownership claims complicated and prolonged the resolution of the WHA and REDA claims. The Court found that the request for attorneys' fees was excessive due to Plaintiff's aggressive pursuit of the ownership claims and the extent of Plaintiff's efforts that were dedicated solely to avoid the impact of the hired-to-invent doctrine.

22. In sum, when awarding $450,000 in Prejudgment Fees under the WHA and the REDA in the 2012 Judgment, the Court concluded, in its discretion, and

based on its understanding of the *Hensley* two-part standard and its intimate familiarity with the pretrial and trial proceedings, that this award was fair and reasonable in relation to the results that Plaintiff obtained in this litigation.

23. If it had the discretion to do so, the Court would again award $450,000 of the requested $819,752.41 in Prejudgment Fees. But the Court unfortunately concludes that it no longer has such discretion under the Court of Appeals' mandate. *Morris*, 2016 NCBC 101, at *27; *see also Morris*, 229 N.C. App. at 58, 747 S.E.2d at 379. The Court now attempts to determine which fees should be eliminated from Plaintiff's request for attorneys' fees because they do not relate to the nucleus of operative facts common to Plaintiff's statutory claims.

## C. Findings of Fact to Support Fee Deductions in Accordance with the Court of Appeals' Mandate

24. The Court of Appeals purports to follow the two-step *Hensley* standard, but it effectively applies the first step and ignores the second step. While Plaintiff has the initial burden of demonstrating that he is entitled to attorneys' fees, *Hensley*, 461 U.S. at 437, the Court has found that all fees were appropriately documented, were reasonably incurred, and were billed at reasonable rates. *See Morris*, 2012 NCBC LEXIS 29, at *31. Based on those undisturbed findings, under the Court of Appeals' mandate, awarding attorneys' fees becomes mandatory if they relate to the common nucleus of operative facts relevant to Plaintiff's successful claims, and the Court has no discretion to otherwise reduce the requested amount to an amount that is reasonable in relation to Plaintiff's success in the litigation.

25. The Court's December Order called for evidentiary presentations on the issue of which fees should be excluded. Defendants challenge several categories of fees, which the Court will now address.

**(1)      Fees in connection with Plaintiff's motions to compel**

26. Defendants urge the Court to deny $92,858.32 of fees incurred in connection with Plaintiff's two motions to compel. (Bayzle Aff. Supp. Defs.' Position Statement Pre-Judgment Fees and Expenses ("Prejudgment Bayzle Aff.") Ex. A.) The Court cannot deduct these fees because Plaintiff's efforts in pursuing those motions were related to the common nucleus of operative facts.

27. There were two separate motions to compel, both of which were filed in federal court but resolved in this Court after the case was remanded. The first motion to compel raised a dispute as to whether Defendants were obligated to produce electronically stored information ("ESI") either in the form in which it was kept in the usual course of business or segregated as to the particular document requests to which it was responsive. The motion presented issues of first impression for North Carolina state courts relating to the production of ESI. The Court entered an interim order that directed Defendants to make efforts to produce an index of source files from which ESI had been taken to enable Plaintiff to determine the source of the ESI. After the interim order was entered, the parties reported that they had resolved the motion.

28. The Court finds that Plaintiff's efforts on the first motion to compel were related to developing the nucleus of operative facts common to Plaintiff's statutory claims.

29. Nevertheless, Defendants argue that the Court cannot allow Plaintiff to recover fees for those efforts because its earlier order denied fees under Rule 26. Those fees should not be disallowed on the basis that efforts related to Plaintiff's first motion to compel were part of Plaintiff's "losing aspects" of the litigation. *See Thomas v. Cooper Indus., Inc.*, 640 F. Supp. 1374, 1379 (W.D.N.C. 1986) (holding that plaintiffs could still be awarded fees incurred in litigating discovery motions on which they lost).

30. The second motion to compel asked the court for an *in camera* review of communications between Scenera and its in-house counsel, Stephen Tytran. The privilege issue was complicated by the fact that Mr. Tytran had both legal and business responsibilities for Scenera. Mr. Tytran was a critical fact witness because of his conversations with Plaintiff regarding Plaintiff's employment and the circumstances surrounding Plaintiff's termination. The Court examined the challenged communications *in camera* and concluded that the claim of privilege was appropriate for each communication. The Court denied the motion to compel and also declined to award fees or costs pursuant to Rule 37.

31. While the motion was not successful, the Court concludes that Plaintiff was reasonable in requesting the Court's *in camera* review and that the motion was

related to developing the nucleus of operative facts common to Plaintiff's successful statutory claims.

32. In sum, following the Court of Appeals' mandate, the Court rejects Defendants' challenge to the $92,858.32 of fees related to Plaintiff's motions to compel.

**(2)** **Fees for efforts involving intellectual property lawyers**

33. Defendants challenge a total of $99,058.71 of fees incurred by, or in connection with, intellectual property counsel, contending that those fees are related solely to Plaintiff's unsuccessful ownership claims. (Defs.' Position Statement Pre-Judgment Fees and Expenses ("Defs.' Prejudgment Statement") 6.) Of this amount, $71,673.71 represents services by Tony Biller and his firm, Coats & Bennett, PLLC. (Prejudgment Bayzle Aff. Ex. B, at 16.) Mr. Biller's efforts, however, were not limited to the ownership claims. In particular, Mr. Biller led negotiations with Scenera concerning Plaintiff's wage claim and participated in a September 16, 2009 mediation seeking to resolve all claims.

34. Mr. Biller continued as counsel of record, along with Walter E. Brock, Jr. of Young Moore and Henderson, P.A. ("YMH"), during the early stages of litigation in the federal and state court actions, and participated in early case management conferences and motion practice. It appears that Mr. Biller was not actively involved in the litigation after May 17, 2010. He formally withdrew as counsel of record on April 14, 2011. Mr. Biller testified at trial as a fact witness, but did not bill for testifying or preparing to testify.

35. Based on its review of the billing records, the Court was able to isolate certain Coats & Bennett billing entries that are related distinctly to the invention ownership or hired-to-invent issues, on which Plaintiff was unsuccessful. The Court concludes that the following fees should be excluded on that basis:

- August 27, 2009      $650.00
- August 28, 2009      $899.25
- September 3, 2009      $495.00
- September 5, 2009      $82.50
- September 8, 2009      $198.00
- September 8, 2009      $487.50
- April 25, 2011      $170.00

        TOTAL:      $2,982.25

(Morris's Position Statement on Allocation of Pre-Judgment Att'ys' Fees and Expenses ("Pl.'s Prejudgment Statement") App. A-2.)

36. The Court was unable to specifically isolate additional Coats & Bennett time entries that are related solely and distinctly to ownership claims because many of the time entries group together efforts related to the ownership claims as well as efforts related to the wage and discharge claims. However, based on its familiarity with the case and its review of Plaintiff's billing records, the Court finds that is reasonable to conclude that a significant portion of the efforts in this category were spent distinctly on the ownership claims. The inability to make a more exact finding is attributed to the grouped time entries that did not adequately detail separate

efforts. (Pl.'s Prejudgment Statement App. A-2.) Plaintiff, rather than Defendants, should bear the consequences of this grouped time keeping; therefore, the Court concludes that an additional $20,000 should be deducted from the Coats & Bennett fees.

37. Defendants separately challenge $20,726 of fees incurred by YMH in conferences with Mr. Biller. (Prejudgment Bayzle Aff. Ex. C, at 8.) Most of those fees were incurred prior to Mr. Biller's withdrawal as counsel of record in this litigation. Although there are some fees related to preparing for Mr. Biller's trial testimony, those efforts are directly related to Plaintiff's successful statutory claims, because Mr. Biller's trial testimony was concentrated on the events preceding and leading up to Plaintiff's termination, laying the foundation for his REDA claim. The Court concludes that the fees incurred to prepare Mr. Biller's testimony are properly included in the total efforts spent to develop the nucleus of operative facts common to the statutory claims on which Plaintiff prevailed.

38. While there are no specific time records that isolate discussions between Mr. Brock and Mr. Biller concerning solely the ownership issues, the Court concludes, based on a total review of the records and its familiarity with the case, that it is reasonable to assume that a portion of those conferences were related solely to the ownership issues. Plaintiff's generalized billing records prevent a more exact finding, but the Court concludes that a total of $5,000 of the fees incurred by YMH in conferences with Mr. Biller should be deducted.

39. Defendants next challenge an additional $4,602 of YMH fees related to conferences with Mr. Filomena, an intellectual property lawyer formerly with Bose McKinney & Evans, LLP, in connection with an intellectual property security agreement. (Prejudgment Bayzle Aff. ¶ 9 & Ex. D.) The Court notes that a significant portion of the $4,602 of fees related to general trial preparation by YMH attorneys, but that some of those fees related specifically to conferences with Mr. Filomena. (*See* Prejudgment Bayzle Aff. Ex. D; Pl.'s Prejudgment Statement App. A-1.) Plaintiff's generalized time entries prevent a more precise fact finding, but, for the same reasons discussed above, the Court concludes that $2,500 of the $4,602 of fees challenged should be deducted for time related to conferences on intellectual property matters unrelated to Plaintiff's successful claims.

40. Defendants next challenge $2,057 of YMH fees related to contract negotiations with Cap-Val American Business Appraisers, LLC, including time for reviewing and analyzing inventor services agreements and reexamination proceedings at the United States Patent and Trademark Office. (*See* Prejudgment Bayzle Aff. ¶ 10 & Ex. E.) The Court concludes that those fees should be excluded because they are unrelated to the statutory claims on which Plaintiff prevailed.

41. In sum, the Court excludes $32,539.25 ($2,982.25 + $20,000 + $5,000 + $2,500 + $2,057) from this category of Prejudgment Fees because those fees were related to time spent solely on the ownership claims and not on developing the nucleus of operative facts common to all claims.

**(3)** **Fees in connection with Scenera's federal declaratory judgment action**

42. Defendants concede that some efforts that Plaintiff expended in regard to his wage and retaliatory discharge claims in the federal court action are properly considered in his fee request. However, Defendants challenge $52,282.83 of fees incurred in the federal action, which they contend related solely to the ownership claims on which Plaintiff was unsuccessful. (Prejudgment Bayzle Aff. Exs. F to I.)

43. First, Defendants challenge $17,033.89 of fees related to Plaintiff's attack on the federal court's diversity jurisdiction. (Prejudgment Bayzle Aff. Exs. F, F-1.) Scenera's federal action sought a declaration that Plaintiff was not entitled to patent bonuses. *See* Amended Complaint ¶¶ 46–48, *Scenera Research, LLC v. Morris*, No. 5:09-cv-412-FL (E.D.N.C. filed Feb. 10, 2010). Plaintiff's statutory claims rested on his assertion that he was fired for insisting on his right to patent bonuses. Any finding by the federal court on that issue would affect Plaintiff's statutory claims. Therefore, it was proper for Plaintiff to ensure that his claims proceeded before a court with jurisdiction over the claims. Notably, Plaintiff ultimately succeeded in challenging the federal court's jurisdiction. The Court concludes that it would be improper to exclude the $17,033.89 of challenged fees.

44. Second, Defendants challenge $1,246.90 of fees incurred to oppose Scenera's motion to file a second amended complaint in federal court. (Prejudgment Bayzle Aff. Exs. G, G-1.) For the same reasons discussed above, the Court concludes that Plaintiff is entitled to those fees.

45. Third, Defendants challenge $24,788.50 of fees related to Plaintiff's motion to dismiss Scenera's federal action and remand all claims to state court. (Prejudgment Bayzle Aff. Exs. H, H-1.) For the same reasons stated above, the Court concludes that Plaintiff is entitled to those fees.

46. Fourth, Defendants challenge $9,213.54 of fees related to the motion practice before the federal court on Scenera's fiduciary duty counterclaim. (Prejudgment Bayzle Aff. Exs. I, I-1.) Scenera's fiduciary duty claim was based on its assertion that Plaintiff had a fiduciary duty to assist Scenera in the assignment and prosecution of its patent applications but refused to do so. Viewed in isolation, Scenera's fiduciary duty counterclaim could be argued to be related distinctly to the ownership claims. However, Scenera also employed this argument as an affirmative defense to Plaintiff's REDA claim and asserted that Plaintiff's breach of his fiduciary duty provided Scenera with an independent basis to terminate him. The jury rejected that defense and ruled for Plaintiff on his REDA claim. The fees incurred in defending against Scenera's fiduciary duty claim cannot be segregated as being totally distinct from the nucleus of operative facts common to the statutory claims on which Plaintiff prevailed. Therefore, the fees should not be deducted.

47. In sum, the Court concludes that Plaintiff is entitled to all fees incurred in connection with Scenera's federal declaratory judgment action.

**(4) <u>Other pretrial fees incurred after remand of the federal action</u>**

48. Defendants contend that Plaintiff should not recover $1,388 of fees incurred to answer Scenera's counterclaims in state court, (Prejudgment Bayzle Aff.

Ex. J,) or $26,703.12 of fees incurred in opposing Scenera's fiduciary duty claim on summary judgment in state court, (Prejudgment Bayzle Aff. Ex. K.) As noted above, Plaintiff's REDA claim and Scenera's fiduciary duty claim are interrelated. However, the Court concludes that the arguments presented on summary judgment included some efforts that were related distinctly to whether Plaintiff's employment contract fell outside the hired-to-invent doctrine, meaning that Plaintiff had ownership rights in the inventions. Therefore, the Court concludes that it is appropriate to deduct $12,500 for those efforts.

49. Defendants next challenge $50,482.60 of fees related to opposing Scenera's motion for summary judgment on Scenera's patent ownership claims and the application of the hired-to-invent doctrine. (Prejudgment Bayzle Aff. Ex. L.) The Court concludes that those fees should be excluded because they are solely related to a claim on which Plaintiff did not prevail.

50. Defendants next contend that $89,747.58 of Plaintiff's discovery-related fees should be reduced by at least 27%, because 27% of Plaintiff's written discovery requests were related solely to Scenera's intellectual property claims on which Plaintiff was unsuccessful. (See Defs.' Prejudgment Statement 19–20; Prejudgment Bayzle Aff. Ex. M, at 54.) Defendants contend that certain interrogatories and document requests related solely to the patent ownership issues. (Prejudgment Bayzle Aff. ¶ 18 & Ex. M-2.) Plaintiff responds that any percentage deduction would be arbitrary and without a real evidentiary basis because there was no discovery directed solely to the patent ownership issues, as all issues turned on the

determination of the terms of Plaintiff's employment agreement. (*See* Pl.'s Prejudgment Statement 15–16.)

51. After reviewing the records, the Court agrees with Defendants that at least some of the discovery was related solely and distinctly to developing a record concerning the ownership claims, and it would be unfair not to exclude some of Plaintiff's discovery fees. However, the Court does not accept the percentage disallowance that Defendants suggest. The Court is unable to make a precise calculation, but based on its management of the discovery and pretrial motion process, it concludes that it is reasonable to allocate $20,000 of Plaintiff's discovery fees as incurred solely in connection with the ownership issues on which Plaintiff did not succeed.

52. In sum, the Court disallows a total of $82,982.60 ($12,500 + $50,482.60 + $20,000) from this category of pretrial fees.

**(5)    Fees incurred at trial**

53. Plaintiff's fees for trial are $190,039.55. (Prejudgment Bayzle Aff. Ex. P, at 43.) Defendants argue that 40% of those fees should be excluded because Plaintiff prevailed on only three of the five claims that the jury considered.

54. This percentage allocation is not consistent with the actual trial proceeding and the time spent on the various claims. The Court had largely resolved the ownership claims before trial through its summary judgment ruling, but allowed Plaintiff the opportunity to present evidence that his negotiated employment agreement made the hired-to-invent doctrine inapplicable to him. Very little of the

trial evidence was directed to that issue. The Court directed a verdict in Defendants' favor on the ownership claims. Therefore, efforts related to the ownership claims did not equal 40% of either parties' trial efforts.

55. The substantial portion of trial efforts must be attributed to the statutory claims on which Plaintiff prevailed. Again, the Court cannot make a precise calculation, but based on its familiarity with the trial proceedings, it concludes that $15,000 of Plaintiff's fees incurred at trial were distinctly related to claims on which Plaintiff did not prevail and should be deducted.

**(6)     Posttrial fees incurred prior to judgment**

56. Defendants challenge $3,915 of fees incurred in Plaintiff's efforts to avoid the Court's entry of judgment in Scenera's favor on the ownership claims. (Prejudgment Bayzle Aff. Ex. Q, at 2.) Defendants' challenge is well-taken, and those fees will be excluded as related solely to claims on which Plaintiff did not succeed.

57. Defendants also challenge $7,207.66 of fees associated with Plaintiff's efforts to attach Scenera's patents as security for the awards on Plaintiff's statutory claims. (Prejudgment Bayzle Aff. Ex. R, at 3.) The effort to attach patents as security for Plaintiff's statutory awards did not depend upon the assertion of an ownership right. The Court did not allow for such attachment, primarily because it concluded that the prosecution of the pending patent applications should proceed without further interference. The Court concludes that Plaintiff's fees incurred to secure his award are recoverable.

**(7)** **Other fees incurred prior to judgment that Defendants contend are not supported by adequate time entries**

58. Defendants contend that an additional total of $27,739, reflected in Exhibit S to Mr. Bayzle's affidavit on Prejudgment Fees, should be disallowed because the supporting time entries are so generalized that it is impossible to determine whether the efforts were directed to claims on which Plaintiff was successful. (Prejudgment Bayzle Aff. Ex. S, at 28.) These include fee entries that simply state "e-mail correspondence" without delineating the subject matter of the correspondence, and entries that are partially redacted because a privilege is being asserted. (Prejudgment Bayzle Aff. Ex. S.)

59. As noted earlier, Plaintiff has the burden to support his fee request. However, courts have not imposed as exacting a standard as Defendants suggest. Plaintiff must accept some responsibility where generalized time records do not allow for a precise determination as to which claims the efforts are related. Based on its review of more specific time entries, the Court concludes that it should not deduct the full amount that Defendants contest, but that it is reasonable to attribute a portion of those fees to the ownership claims. Therefore, the Court concludes that it is appropriate to exclude $15,000 of those fees.

**D.** **Summary as to Prejudgment Fees**

60. Based on the reasons and findings stated above, the Court adheres to its conclusion, as stated in the 2012 Judgment, that an award of $450,000 is appropriate and bears a reasonable relation between the fees incurred and Plaintiff's success in

the litigation. If the Court had discretion to do so, it would again award Plaintiff $450,000 in Prejudgment Fees.

61. But the Court understands it does not have this discretion. Pursuant to the Court of Appeals' mandate, the Court can only exclude fees related distinctly to claims that are unrelated to the nucleus of operative facts in common with Plaintiff's wage and discharge claims. On that basis, the Court concludes that, even though the award is excessive, Plaintiff should recover $670,315.56 of Prejudgment Fees—calculated as $819,752.41 less $32,539.25 of fees related solely to efforts involving intellectual property lawyers, less $82,982.60 of pretrial fees in state court for efforts related distinctly to the ownership claims, less $15,000 of trial fees related solely to the ownership claims, less $3,915 of fees related to efforts to avoid judgment in Defendants' favor on the ownership claims, less $15,000 for fees not adequately supported by sufficiently specific time entries.

### III. ATTORNEYS' FEES INCURRED POSTJUDGMENT

62. The Court now considers Plaintiff's four motions for fees incurred after entry of the 2012 Judgment. The Court of Appeals did not review these motions.

63. As a preliminary matter relating to the several motions for recovery of fees incurred after judgment, the Court has reviewed the underlying billing records for each motion and finds that the fees represent efforts by lawyers with the appropriate experience, training, and skill required for this litigation. The Court further finds that the fees requested were adequately documented, reasonably

incurred, and charged at rates both reasonable and commensurate with fees charged by others with similar experience for similar litigation in the same locale.

## A. Plaintiff Is Entitled to Fees Incurred in Defending the 2012 Judgment.

64. Defendants argue that the Court should summarily deny Plaintiff's motions for postjudgment fees because there is no statutory basis for awarding such fees. They contend that the WHA and the REDA allow for the recovery of fees incurred in obtaining a statutory award but not for fees incurred in defending those awards. (Defs.' Br. Opp'n to Pl.'s Mot. Atty's' Fees, Aug. 20, 2012, at 3.)

65. It is axiomatic that a plaintiff cannot recover attorneys' fees absent statutory authority. *See Nohejl v. First Homes of Craven Cty., Inc.*, 120 N.C. App. 188, 191, 461 S.E.2d 10, 12 (1995). Neither the WHA nor the REDA specify whether the discretion to award attorneys' fees is limited to prejudgment fees. *See* N.C. Gen. Stat. §§ 95-25.22(d), -243(c).

66. In other contexts, the North Carolina Court of Appeals has held that once a trial court has made "a finding that [the prevailing party is] entitled to attorney's fees in obtaining their judgment, any effort by [that party] to protect that judgment should likewise entitle them to attorney's fees." *City Fin. Co. of Goldsboro v. Boykin*, 86 N.C. App. 446, 449, 358 S.E.2d 83, 85 (1987); *see also Willen v. Hewson*, 174 N.C. App. 714, 722, 622 S.E.2d 187, 193 (2005); *Eley v. Mid/E. Acceptance Corp. of N.C.*, 171 N.C. App. 368, 377, 614 S.E.2d 555, 562 (2005); *Garlock v. Henson*, 112 N.C. App. 243, 247, 435 S.E.2d 114, 116 (1993). The Court of Appeals explained that where the statute is remedial, it "should be construed and applied liberally in order

to grant [the prevailing party] an additional award of attorney's fees for time spent in protecting their judgment." *City Fin. Co. of Goldsboro*, 86 N.C. App. at 450, 358 S.E.2d at 85.

67. The Court of Appeals' holdings are consistent with several federal court decisions holding that when "a plaintiff wins a suit and is entitled by statute to a reasonable attorney's fee, the entitlement extends to the fee he reasonably incurs in defending the award of that fee," because the purpose of the statutory fee award is to make the party whole for the expenses incurred in prosecuting the claim. *Gorenstein Enters., Inc. v. Quality Care-USA, Inc.*, 874 F.2d 431, 438 (7th Cir. 1989); *see also In re John Richards Homes Bldg. Co.*, 552 F. A'ppx 401, 410 (6th Cir. 2013); *Consolo v. George*, No. 94-1202, 1996 U.S. App. LEXIS 10196, at *3 (1st Cir. May 3, 1996); *Se. Legal Def. Grp. v. Adams*, 657 F.2d 1118, 1126 (9th Cir. 1981); *Young v. Kenley*, 641 F.2d 192, 195 (4th Cir. 1981); *Love v. Mayor of Cheyenne*, 620 F.2d 235, 237 (10th Cir. 1980); *Johnson v. Mississippi*, 606 F.2d 635, 638–39 (5th Cir. 1979). If courts do not allow for the recovery of appellate fees, then "the fee will undercompensate" the prevailing party. *Pickett v. Sheridan Health Care Ctr.*, 664 F.3d 632, 654 (7th Cir. 2011) (quoting *Gorenstein Enters.*, 874 F.2d at 438).

68. The Court concludes that the legislative policy embodied in the WHA and the REDA mandates that a court has discretion to award a prevailing party postjudgment attorneys' fees incurred to successfully defend the judgment in his favor. Therefore, "Plaintiff should recover attorneys' fees incurred on appeal that directly benefited his ability to recover amounts awarded to him in the Court's

Judgment," but not those fees "incurred on appeal in an effort to reverse rulings adverse to him." *Morris*, 2016 NCBC LEXIS 101, at *31.

**B.**   **Fees Incurred in Defending Against Defendants' JNOV Motion**

69.   Based on the Court's December Order, Plaintiff now seeks an award of $24,875.62 of the $29,049.56 of attorneys' fees incurred in successfully defending against Defendants' JNOV motion ("JNOV Fees"). (Morris's Position Statement Allocation Post-Judgment Att'ys' Fees and Expenses ("Pl.'s Postjudgment Statement") 2 & App. 1; Suppl. Mem. Law Supp. Morris's Pending Mot. Atty's' Fees 14.)

70.   Defendants contend that the Court should apportion the JNOV Fees among successful and unsuccessful claims. However, the requested fees related exclusively to claims on which Plaintiff prevailed.

71.   The Court finds and concludes that Plaintiff is entitled to an award of $24,875.62 for attorneys' fees and expenses incurred between May 1, 2012, and June 30, 2012, to defend against Defendants' JNOV motion.

72.   The Court rejects Defendants' suggestion that this award should be reduced because the motion seeking those fees was first filed when this Court was *functus officio*.

**C.**   **Fees Related to The Appeals to The North Carolina Court of Appeals**

73.   Both parties appealed from the 2012 Judgment. Defendants were the first to appeal. Plaintiff's cross-appeal challenged this Court's refusal to award additional statutory damages and penalties and its refusal to allow Plaintiff to elect

between the remedy of rescinding his prior assignments or accepting the award of patent bonuses and liquidated damages. *Morris*, 229 N.C. App. at 48, 747 S.E.2d at 373.

74. At the Court of Appeals, Plaintiff successfully defended against Defendants' appeal attacking his WHA and REDA awards, but was unsuccessful on his argument that this Court erred when it refused to award him additional liquidated damages and penalties. *Id.* at 40, 50, 747 S.E.2d at 368, 374. Plaintiff secured a Court of Appeals ruling in his favor on his election of remedies argument, but that ruling was later reversed by the Supreme Court. *See Morris*, 268 N.C. at 868, 788 S.E.2d at 162. Plaintiff successfully challenged this Court's decision to reduce his prejudgment attorneys' fees, and the Court of Appeals remanded the issue to this Court for further findings of fact, as discussed above. *Morris*, 229 N.C. App. at 58, 747 S.E.2d at 379. Defendants did not appeal the Court of Appeals' ruling on the attorneys' fee issue to the Supreme Court.

75. Plaintiff first filed his motion in the Court of Appeals seeking an award of attorneys' fees incurred on the appeals before that court. On September 11, 2013, the Court of Appeals denied that motion, finding that the motion should have been filed with this Court. On June 28, 2016, Plaintiff filed his motion in this Court. Plaintiff first sought a total of $133,027.16 of fees incurred in connection with the appeals to the Court of Appeals ("Court of Appeals Fees"). (Mot. Att'ys' Fees and Expenses Incurred on Appeal N.C. Ct. Appeals 9.) Based on this Court's December Order, Plaintiff now contends that $63,099.83 of the Court of Appeals Fees should be

awarded, because they were related directly to his statutory claims, which he successfully defended on appeal.

76. Based on its review of Morris's Position Statement on Allocation of Postjudgment Attorneys' Fees and Expenses ("Plaintiff's Postjudgment Statement") and the unredacted billing records submitted *in camera*, the Court concludes that, when calculating his request for $63,099.83, Plaintiff

- eliminated fees for time spent on his cross-appeal that related solely to the ownership issues;

- eliminated fees for time spent on his attempt to stay execution of the 2012 Judgment in regard to patent assignments;

- eliminated fees for time spent on the motion to show cause regarding his failure to assign inventions;

- included fees for time spent developing the appellate record for both Defendants' appeal and Plaintiff's cross-appeal;

- generally excluded time spent on researching and brief writing specific to his cross-appeal, but evenly divided the time spent on research that might be reasonably attributed to both appeals;

- equally divided fees incurred in preparing for and presenting oral argument where the billing entry showed that the preparation related to both his successful and unsuccessful claims; and

- included fees from isolated entries where the oral argument preparation was specific to issues raised only by Defendants' appeal, such as entries on May 19, 2013, and May 20, 2013.

77. Plaintiff's Postjudgment Statement is largely consistent with the Court's December Order. However, the Court finds that the request improperly includes $1,470 of fees for work related to Plaintiff's challenge to the Court's denial of treble damages. This deduction reduces Plaintiff's Court of Appeals Fees to $61,629.83.

78. Defendants argue instead that Plaintiff's maximum award for Court of Appeals fees should be $33,260.33. (Defs.' Position Statement Post-Judgment Fees and Expenses ("Defs.' Postjudgment Statement") 8.) Defendants reach that number by making the following deductions:

- $67,796.50 of fees incurred exclusively on Plaintiff's cross-appeal, (Bayzle Aff. Supp. Post-Judgment Position Statement ("Postjudgment Bayzle Aff.") ¶ 4 & Ex. 2);

- $14,127 of fees related to Plaintiff's efforts to rescind patent assignments, (Postjudgment Bayzle Aff. ¶ 5 & Ex. 3);

- $2,481.50 of fees incurred to litigate the JNOV Fees motion, (Postjudgment Bayzle Aff. ¶ 6 & Ex. 4);

- $4,146 of fees incurred to make an improper filing of the motion for the Court of Appeals Fees at the appellate court, (Postjudgment Bayzle Aff. ¶ 7 & Ex. 5);

- $752.50 of fees incurred during settlement negotiations, (Postjudgment Bayzle Aff. ¶ 8 & Ex. 6);

- $4,851.50 of fees associated with billing records that are redacted and thus preclude any determination as to what efforts are represented by the records, (Postjudgment Bayzle Aff. ¶ 9 & Ex. 7); and

- $5,611.83 of the $11,223.66 of fees that Defendants contend are related to both Plaintiff's cross-appeal and their appeal, (Defs.' Postjudgment Statement 8.)

79. After reviewing Defendants' supporting affidavits, the Court concludes that some of Defendants' deductions are proper, but others are not. Based on those affidavits, the Court concludes that the maximum deductions should be: (1) $59,191.50 of fees related solely to Plaintiff's cross-appeal; (2) $14,127 of fees related to efforts to rescind patent assignments; (3) $1,118 of fees attributed to filing the motion for Court of Appeals Fees at the Court of Appeals; and (4) $376.25 of fees attributed to settlement discussions. Those deductions would reduce Plaintiff's request from $133,027.16 to $58,214.41.

80. Having considered the arguments of all parties, the Court awards Plaintiff $58,214.41 for fees incurred in connection with proceedings before the Court of Appeals.

**D.    Fees Related to The Appeals to The North Carolina Supreme Court**

81. At the North Carolina Supreme Court, Plaintiff was successful in defending his recovery of patent bonuses based on patents not yet issued. Plaintiff

was unsuccessful on his challenge to this Court's directed verdict on ownership claims and its refusal to award additional liquidated damages or penalties on the statutory claims.

82. Plaintiff initially filed a motion on July 17, 2016, seeking to recover all the fees incurred while the case was on appeal before the North Carolina Supreme Court, totaling $163,101.83 ("Supreme Court Fees"). (Suppl. Mem. Law Supp. Morris's Pending Mots. Att'ys' Fees 15.) Plaintiff contends, pursuant to the Court's December Order, that $38,485.48 of those fees should be awarded, because they are fairly attributed to the statutory claims on which Plaintiff succeeded. (Pl.'s Postjudgment Statement 2.) Defendants contend that the Court should award no more than $23,978.97 of the Supreme Court Fees. (Defs.' Postjudgment Statement 17.)

83. Plaintiff submitted a chart showing which billing entries were included to support his request for $38,485.48 of the Supreme Court Fees. (Pl.'s Postjudgment Statement 2 & App. 3.) Based on its review of the chart and supporting records, the Court concludes that, when making his calculation, Plaintiff

- included fees incurred to oppose the amici filing that challenged both the award of patent bonuses and the rescission claim, but allocated the time spent between the claims and sought only the fees related to his successful claim;

- excluded fees incurred to oppose the amici filings that addressed solely the recession claim on which he was unsuccessful;

- excluded fees related solely to his unsuccessful challenges to the 2012 Judgment; and

- allocated fees incurred for efforts directed toward both his successful and unsuccessful claims on an entry-by-entry basis, with variable percentages, sometimes allocating only 25% of a particular fee entry to his successful claims.

84. Defendants reach their amount by first excluding two categories of fees altogether—(1) $9,007 of fees incurred to value Scenera's patent portfolio and (2) $45,099.50 of fees related solely to Plaintiff's unsuccessful cross-appeal. (Defs.' Postjudgment Statement 17; Postjudgment Bayzle Aff. ¶¶ 10–11 & Exs. 8, 9.) After these exclusions, Defendants apply a 22% ratio to the remaining fees.

85. After review, the Court concludes that Plaintiff did not include any of the fees from Defendants' first excluded category in his revised request for Supreme Court Fees. As to Defendants' second excluded category of fees, the Court concludes that Plaintiff, for the most part, included only the percentage of these fees that related to his successful claims and excluded those fees related solely to his unsuccessful cross-appeal. (*See* Pl.'s Postjudgment Statement App. 3.)

86. After reviewing the parties' different allocations, the Court concludes that Plaintiff should be awarded a total of $30,000 of his requested Supreme Court Fees.

**E.     Plaintiff Is Entitled to Recover Fees Incurred to Litigate and Defend His Award of Attorneys' Fees.**

87.     The United States Supreme Court was prescient when it cautioned in *Hensley* that "[a] request for attorneys' fees should not result in a second major litigation," 461 U.S. at 437, which is exactly what has happened in this case. Hundreds of thousands of dollars in fees have been incurred to litigate solely the proper fee award.  Many of these fees are attributed to filings necessary to make the findings of fact mandated by the Court of Appeals.  This Court has likewise expended efforts to make those findings comparable to making detailed findings of fact and conclusions of law in a complex civil bench trial.  A trial court is uniquely positioned to make a discretionary award of attorneys' fees after considering all the factors relevant to determining the reasonable relationship between efforts made and success gained.  This discretionary award cannot be easily reduced to detailed findings of fact.  When such fact finding is required, the parties must incur substantial expense in evidentiary presentations and briefing solely on the attorneys' fee issue.

88.     The Court must now address whether fees incurred litigating and defending a fee award (hereafter referred to as "fees on fees") may be recovered. There is no North Carolina precedent on this issue.  The Court is, however, guided by decisions of federal courts and other state courts that have interpreted comparable statutes, including the federal Fair Labor Standards Act (the "FLSA"), which has the same policies and purpose as North Carolina's WHA.

**(1)    Plaintiff may recover fees incurred in litigating an award authorized by N.C. Gen. Stat. §§ 95-25.22 and 95-243.**

89.    The parties cite no North Carolina case on whether the Court can award fees incurred in defending a fee award under the WHA or the REDA, and the Court has found no case on this point.  More generally, the North Carolina Court of Appeals, has recognized "that the trial court has the authority to award attorney's fees for all phases of a case," and that attorneys' fee provisions in remedial statutes should be construed liberally in order "to accomplish the purpose of the Legislature."  *City Fin. Co. of Goldsboro*, 86 N.C. App. at 449–50, 358 S.E.2d at 85 (quoting *Hicks v. Albertson*, 284 N.C. 236, 239, 200 S.E.2d 40, 42 (1973)).

90.    "The North Carolina Wage and Hour Act is modeled after the Fair Labor Standards Act," *Laborers' Int'l Union v. Case Farms, Inc.*, 127 N.C. App. 312, 314, 488 S.E.2d 632, 634 (1997), and the attorneys' fee provisions in the FLSA and North Carolina's WHA are similarly worded.  *Compare* 29 U.S.C. § 216(b) (2012) ("The court in such action shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action."), *with* N.C. Gen. Stat. § 95-25.22(d) ("The court, in any action brought under this Article may, in addition to any judgment awarded plaintiff, order costs and fees of the action and reasonable attorneys' fees to be paid by the defendant.").

91.    The majority of federal circuit courts have held that, where a party is entitled to a statutory award of fees, "the time expended by attorneys in obtaining a reasonable fee is justifiably included in . . . the court's fee award," including both the "time spent preparing the fee petition and time devoted to litigating the amount of

the award at the fee hearing." *Bagby v. Beal*, 606 F.2d 411, 416 (3d Cir. 1979) (quoting *Prandini v. Nat'l Tea Co.*, 585 F.2d 47, 53 (3d Cir. 1978)); *see also Pickett*, 664 F.3d at 654 (quoting *Gorenstein Enters.*, 874 F.2d at 438); *Consolo*, 1996 U.S. App. LEXIS 10196, at *3 (citing *Lund v. Affleck*, 587 F.2d 75, 77 (1st Cir. 1978)); *Jorstad v. IDS Realty Tr.*, 643 F.2d 1305, 1315 (8th Cir. 1981); *Young*, 641 F.2d at 195; *Love*, 620 F.2d at 237; *Johnson*, 606 F.2d at 638–39; *Gagne v. Maher*, 594 F.2d 336, 344 (2d Cir. 1979); *Weisenberger v. Huecker*, 593 F.2d 49, 54 (6th Cir. 1979).

92.     As explained by the United States Court of Appeals for the Third Circuit, the recovery of fees on fees "comport[s] with the purpose behind most statutory fee authorizations," which is to encourage "attorneys to represent indigent clients and to act as private attorneys general in vindicating congressional policies." *Bagby*, 606 F.2d at 416 (quoting *Prandini*, 585 F.2d at 53). "If an attorney is required to expend time *litigating* his fee claim, yet may not be compensated for that time, the attorney's effective rate for all the hours expended on the case will be correspondingly decreased," and "attorneys may become wary about taking . . . cases for which attorneys' fees are statutorily authorized." *Id.* (quoting *Prandini*, 585 F.2d at 53).

93.     The United States Court of Appeals for the D.C. Circuit adopted that reasoning and held that fees incurred in litigating the fee award authorized by the FLSA should be awarded. *Laffey v. Nw. Airlines, Inc.*, 746 F.2d 4, 11 (D.C. Cir. 1984), *overruled on other grounds by Save Our Cumberland Mountains, Inc. v. Hodel*, 857 F.2d 1516, 1517 (D.C. Cir. 1988). Additionally, if fees on fees were not awarded, then "a deep pocket losing party" could "dissipate the incentive provided by an award

through recalcitrance and automatic appeals." *Souza v. Southworth*, 564 F.2d 609, 614 (1st Cir. 1977).

94. There is also case law from several state courts that is consistent with those federal decisions and allows for the award of fees on fees. *See, e.g.*, *Serrano v. Unruh*, 652 P.2d 985, 997 (Cal. 1982) (holding that, "absent circumstances rendering the award unjust, fees recoverable under section 1021.5 [of California's Code of Civil Procedure] ordinarily include compensation for all hours reasonably spent, including those necessary to establish and defend the fee claim"); *Stifel Fin. Corp. v. Cochran*, 809 A.2d 555, 560–61 (Del. 2002) (holding that the reason for awarding "fees on fees" in workers' compensation claims is equally applicable for awarding attorney's fees for time spent on a fee application under other sections of Delaware's Code); *Digiacomo v. Bd. of Pub. Educ.*, 507 A.2d 542, 547 (Del. 1986) (holding "that it is appropriate to award attorney's fees for time spent in determining the amount of the fee award" and "adopt[ing] the rationale of the Third Circuit Court of Appeals in *Bagby v. Beal*"); *Winn-Dixie Stores, Inc. v. Reddick*, 954 So. 2d 723, 731 (Fla. Dist. Ct. App. 2007) (stating that a party seeking entitlement to attorneys' fees pursuant to Florida's Civil Rights Act can receive an award of fees for time spent establishing their entitlement to that fee); *Robb v. Ridgewood Bd. of Educ.*, 635 A.2d 586, 595 (N.J. Super. Ct. Ch. Div. Aug. 30, 1993) ("When an award of attorneys' fees is statutorily authorized . . . the reasonable expenses of preparing the fee application should be included in the award."); *Vill. of W. Unity ex rel. Beltz v. Merillat*, 861 N.E.2d 902, 907–08 (Ohio Ct. App. 2006) (holding that the failure to compensate an attorney for

the time spent preparing the attorney fee argument, without any explanation, would not correspond to the purpose behind most statutory fee authorizations); *Hollen v. Hathaway Elec., Inc.*, 584 S.E.2d 523, 527–28 (W. Va. 2003) (holding that "the time expended by attorneys in obtaining a reasonable fee is justifiably included . . . in the court's fee award" under West Virginia's Wage Payment and Collection Act (quoting *Prandini*, 585 F.2d at 53)).

95. A decision of the Supreme Court of West Virginia is particularly instructive when considering an award based on North Carolina's WHA because the statutory authorization for attorneys' fees in West Virginia's Wage Payment and Collection Act ("West Virginia Act") is virtually identical to the North Carolina statute. *See Hollen*, 584 S.E.2d at 527–28. The West Virginia Act provides that "[t]he court in any action brought under this article may, in the event that any judgment is awarded to the plaintiff or plaintiffs, assess costs of the action, including reasonable attorney fees against the defendant." W. Va. Code § 21-5-12(b). The West Virginia Supreme Court explained that "the purpose of the fee shifting under the Act is that the opportunity to recovery attorney's fees makes it much more likely that the provisions of the Act will be enforced, and that those it seeks to aid will be able to benefit from its protections." *Hollen*, 584 S.E.2d at 527. If the attorney were not compensated for the time spent "preparing the fee petition and the legal arguments necessary to support it. . . . the net effect would be to reduce the attorney's hourly rate for all the hours worked on the case," which would undermine the purpose of the statutory authorization of fees. *Id.* at 527–28.

96.     The Court concludes that North Carolina's appellate courts would likely adopt the rationale of the federal and state decisions discussed above. The Court therefore concludes that a plaintiff may recover fees on fees in connection with litigating the proper fee to be awarded under N.C. Gen. Stat. §§ 95-25.22 and 95-243.

**(2)     Separate factors may guide a court's discretion when awarding fees on fees.**

97.     Some courts have stated that the standard for awarding fees on fees should not necessarily be the same as the standard employed in making the initial fee award, because "limitations must be placed on the size of the[ ] fees," if not "the prospect of large fees later on may discourage early settlement of cases by rewarding protracted litigation of both the [underlying] case and the attorney fee case." *Ne. Ohio Coal. for the Homeless v. Sec'y of Ohio*, 695 F.3d 563, 574 (6th Cir. 2012) (quoting *Coulter v. Tennessee*, 805 F.2d 146, 151 (6th Cir. 1986), *abrogated on other grounds by Ne. Ohio Coal. for the Homeless v. Husted*, 831 F.3d 686, 720 (6th Cir. 2016)).

98.     Courts have determined that "lawyers should not recover fees for [fee recovery] services at the same rate as for their work on the merits of the case." *Robb*, 635 A.2d at 595. Additionally, courts have explained "that a fee award for hours devoted to the preparation of a fee application should be reduced when the plaintiffs do not achieve complete success on the fee petition." *Id.*; *see also Institutionalized Juveniles v. Sec'y of Pub. Welfare*, 568 F. Supp. 1020, 1034 (E.D. Pa. 1983), *aff'd in part and vacated in part on other grounds*, 758 F.2d 897 (3d Cir. 1985). To determine the reasonableness of the fees sought for litigating the underlying fee award, the Seventh Circuit conducts a "comparison between the hours spent on the merits and

the hours spent on the fee petitions" to discourage lawyers from "litigat[ing] fee issues with greater energy and enthusiasm than they litigate any other type of issue." *Spegon v. Catholic Bishop of Chi.*, 175 F.3d 544, 554 (7th Cir. 1999) (quoting *Ustrak v. Fairman*, 851 F.2d 983, 988 (7th Cir. 1988)).

99.     Other courts, however, have determined that the standard to determine reasonableness of the underlying fee, as set forth in *Hensley*, is the same discretionary standard that courts should use to calculate the appropriate fees on fees award.  *See Comm'r, Immigration & Naturalization Serv. v. Jean*, 496 U.S. 154, 161 (1990) (explaining that, once a party establishes he is eligible for fees under the Equal Access to Justice Act, "the district court's task of determining what fee [on fee award] is reasonable is essentially the same as that described in *Hensley*"); *Ne. Ohio Coal. for the Homeless*, 831 F.3d at 722 (abrogating the presumptive 3% cap for the award of fees on fees and deciding that "[t]he district court can correct any abuses at the fees for fees stage under the [*Hensley*] 'reasonableness' standard").

100.    In addition to the reasoning in these cases, the Court additionally concludes that a successful plaintiff should not be unduly penalized for responding to a defendant who aggressively challenges the plaintiff's right to recover any fees. Overall, the Court should exercise its discretion to assign appropriate responsibility for the extent of the fees on fees incurred when determining the appropriate amount to award.

101.    In sum, the Court concludes that the WHA and the REDA vest the Court with discretionary authority to award attorneys' fees incurred in defending an

attorneys' fee award on the underlying statutory claim. This discretion must be exercised in a manner that protects the receipt of the initial attorneys' fee award without encouraging unnecessary protracted litigation on that fee award.

**(3)** **Plaintiff's fees incurred after remand from the Supreme Court**

102. Plaintiff's final motion requests $95,570.94 for attorneys' fees and expenses incurred since the remand of this matter from the North Carolina Supreme Court. (Pl.'s Mot. Att'ys' Fees Incurred After N.C. Supreme Ct.'s Decision 3.)

103. Defendants argue that Plaintiff should not be awarded any of his fees incurred on remand because all efforts after remand resulted solely from Plaintiff making an unreasonable lump-sum request for all his fees, instead of limiting his request to only those fees related to his successful claims. That argument fails to consider the Court of Appeals' holding that fees incurred through trial should not be apportioned among claims unless the fees were not related to a nucleus of operative facts common to Plaintiff's successful claims.

104. The Court has carefully reviewed Plaintiff's billing records and first concludes that a total of $3,910.07 should be disallowed because those fees resulted from efforts to provide tax advice, to coordinate with new counsel, and to conduct settlement discussions. This leaves a remaining claimed amount of $91,660.87. This amount is clearly related to Plaintiff's wage and discharge claims.

105. Taking into consideration the policy issues addressed by the various courts as discussed above, and other relevant factors, the Court, in its discretion, concludes that some portion of Plaintiff's fees on fees should be disallowed.

106.     The Court awards Plaintiff a total of $60,000 for fees incurred after remand from the Supreme Court.

**F.     Plaintiff Is Not Entitled to Interest on His Attorneys' Fee Award.**

107.     Plaintiff seeks interest on his attorneys' fee award.  In its 2012 Judgment, the Court awarded attorneys' fees with interest, but the attorneys' fee award was reversed.  On appeal, Defendants did not challenge the award of interest, and the Court of Appeals did not discuss interest on the fee award.   Defendants have now, for the first time, challenged Plaintiff's right to recover interest.

108.     After further review and study of the appropriate authorities, the Court concludes that it erred by awarding Plaintiff interest on the attorneys' fee award in the 2012 Judgment, and it cannot make such an award now.

109.     A party recovers interest on judgments only if specifically authorized by statute. *See Pierce v. United States*, 255 U.S. 398, 406 (1921).  When granting a court discretion to award attorneys' fees, neither the WHA nor the REDA addresses interest.  The Court of Appeals specifically held that plaintiffs who had a successful WHA claim "were not entitled to interest on the liquidated damages award" because, "[w]hile section 95-25.22 states that interest may be recovered on the unpaid wages, it does not provide that interest is payable on liquidated damages." *Hamilton*, 118 N.C. App. at 16, 454 S.E.2d at 286; *see* N.C. Gen. Stat. § 95-25.22.  In *Hamilton v. Memorex Telex Corp.*, while the Court of Appeals did not specifically address interest on attorneys' fees, it appeared to construe section 95-25.22 as allowing interest only on the award of (1) unpaid minimum wages, (2) unpaid overtime compensation, and

(3) unpaid wage amounts due pursuant to section 95-25.6 through 95-25.12, because those are the only damages for which the statute specifically authorizes interest. 118 N.C. App. at 16, 454 S.E.2d at 286; *see* N.C. Gen. Stat. § 95-25.22(a).

110. The Court concludes that allowing interest on an attorneys' fees award under the WHA or the REDA would be inconsistent with the Court of Appeals decision discussed above.

111. The Court has also considered N.C. Gen. Stat. § 24-5, which states, in part, that "[a]ny . . . portion of a money judgment in an action other than contract, except the costs, bears interest from the date of entry of judgment." N.C. Gen. Stat. § 24-5(b) (2015). Plaintiff contends that attorneys' fees should be classified as part of the "money judgment," particularly because both sections 95-25.22 and 95-243 separately state that the Court may award costs and attorneys' fees, which necessarily must be considered as separate awards. *See id.* § 95-25.22(d) ("The court . . . may, in addition to any judgment awarded plaintiff, order costs and fees of the action and reasonable attorneys' fees to be paid by the defendant."); *id.* § 95-243(c) ("The court may award to the plaintiff . . . the reasonable costs and expenses, including attorneys' fees . . . .").

112. Defendants instead contend that attorneys' fees constitute "costs" as the term is used in section 24-5(b), precluding an award of interest. In making their argument, Defendants overstate the Court of Appeals' holding in *Nexsen Pruet, PLLC v. Martin*, which held that "the trial court properly categorized the fees as costs," but it did so because it was considering N.C. Gen. Stat. § 7A-307, which specifically

categorizes attorneys' fees as a "[c]ost[ ] in administration of estates."  212 N.C. App. 680, 683, 713 S.E.2d 130, 132 (2011); N.C. Gen. Stat. § 7A-307 (2015).  The Court does not believe that *Nexsen Pruet*'s holding controls the issue of interest on fee awards under the WHA or the REDA.

113.   Some federal courts have interpreted "money judgment" to include the award of attorneys' fees, meaning that interest is recoverable on such awards pursuant to 28 U.S.C. § 1961(a).  However, North Carolina's general interest statute directly excludes the award of interests on costs, while the comparable federal statute does not.  *See* N.C. Gen. Stat. § 24-5(b).

114.   In sum, the Court concludes that Plaintiff is not entitled to interest on the award of attorneys' fees under the WHA or the REDA.  Even if the award of attorneys' fees in the 2012 Judgment had not been reversed, Defendants would be entitled to relief under Rule 60.

## IV.    FINAL JUDGMENT

115.   The Court awards Plaintiff the sum of $670.315.56 for Prejudgment Fees incurred from the inception of the litigation in 2009 through April 30, 2012.  As noted, the Court believes this award is excessive, and if it had discretion to do so, it would again award $450,000 in Prejudgment Fees, which is the sum that reflects a reasonable relationship between the efforts expended and the results that Plaintiff achieved.

116.   In its discretion, and based on the above findings and conclusions, the Court awards Plaintiff the sum of $24,875.62 for attorneys' fees and expenses

incurred between May 1, 2012, and June 30, 2012, to successfully defend against Defendants' JNOV motion. Those fees were related directly to the statutory claims on which Plaintiff prevailed, and the amount of the award bears a reasonable relation to Plaintiff's success in defending against Defendants' JNOV motion.

117. In its discretion, and based on the above findings and conclusions, the Court awards Plaintiff the sum of $58,214.41 for attorneys' fees and expenses incurred between July 1, 2012, and September 5, 2013, in connection with the appeals before the North Carolina Court of Appeals. This amount is based on efforts related directly and distinctly to the statutory claims on which Plaintiff prevailed, and has a reasonable relationship to Plaintiff's success on appeal to the North Carolina Court of Appeals.

118. In its discretion, and based on the above findings and conclusions, the Court awards Plaintiff the sum of $30,000 for attorneys' fees and expenses incurred between September 6, 2013, and May 19, 2015, while the case was before the North Carolina Supreme Court. This amount is based on efforts related directly and distinctly to the statutory claims on which Plaintiff prevailed, and has a reasonable relationship to Plaintiff's success on appeal to the North Carolina Supreme Court.

119. In its discretion, and based on the above findings and conclusions, the Court awards Plaintiff the sum of $60,000 in attorneys' fees and expenses incurred between May 20, 2015, and the present, during which time the case was before this Court following remand from the North Carolina Supreme Court.

120. Plaintiff is not entitled to recover interest on those awards.

121. Accordingly, Plaintiff Robert Paul Morris is entitled to recover from Scenera Research, Inc. and Ryan C. Fry, jointly and severally, the total amount of $843,405.59.

122. Except as provided in this Order, each party shall bear its own costs.

123. Having resolved the sole outstanding issue following remand from the North Carolina Supreme Court and the other pending motions on attorneys' fees, this Final Judgment and Attorneys' Fee Award is the Court's final judgment and decree in all respects.

IT IS SO ORDERED, this the 31st day of May, 2017.


/s/ James L. Gale

James L. Gale
Chief Business Court Judge